IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| K R SMITH TRUCKING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 8-CV-01351-WEB-DWB |
| | ) | |
| PACCAR Inc, and PETERBILT MOTORS | ) | |
| COMPANY, a division of PACCAR, Inc, | ) | |
| and WESTERN PETERBILT, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF
## PACCAR INC AND PETERBILT MOTORS COMPANY'S MOTION TO DISMISS

COME NOW PACCAR Inc and Peterbilt Motors Company, by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and D. Kan. Rule 7.1(a) submit this memorandum in support of PACCAR Inc and Peterbilt Motors Company's Motion to Dismiss.

## I.    INTRODUCTION

This is a product liability action wherein Plaintiff seeks to recover economic damages for fire damage to Plaintiff's commercial truck, which damage occurred subsequent to Plaintiff allegedly purchasing the truck from Western Peterbilt, Inc. ("Western Peterbilt").   Prior to Plaintiff's purchase, the incident truck was sold by Peterbilt Motors Company to Western Pacific Leasing, Inc. ("Western Pacific"), a party not named in this lawsuit.  It is unknown at this time how the incident truck was subsequently transferred from Western Pacific to Western Peterbilt. In its First Amended Complaint ("FAC"), Plaintiff asserts four separate claims against both PACCAR Inc ("PACCAR") and Peterbilt Motors Company ("Peterbilt") (collectively "Defendants") based on the Washington Consumer Protection Act ("WCPA"); breach of implied warranties; breach of express warranties; and strict liability, respectively.  FAC at 4, 5, 7, 8.

However, Plaintiff's WCPA claim fails for two independent reasons: (1) PACCAR and Peterbilt did not engage in any deceptive act or practice, and (2) Kansas law applies and prohibits Plaintiff's consumer protection based claim.  Plaintiff's second and third causes of action for breach of implied and express warranties also fail because there is no privity of contract between Plaintiff and PACCAR or Peterbilt.  Finally, Plaintiff's fourth cause of action for strict liability is barred by the economic loss doctrine, which prohibits strict liability claims when the only injury sustained is economic damage to the property itself, *i.e.*, Plaintiff's truck.  Therefore, Plaintiff has failed to set forth a valid claim against Defendants upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  Accordingly, this Court should dismiss Plaintiff's FAC against Defendants in its entirety.

## II.   <u>FACTUAL BACKGROUND</u>

On or about March 28, 2005, Plaintiff entered into a contract with Western Pacific for the sale of a used 2005 Model 379 Peterbilt Truck (the "truck").  *See* <u>Exhibit A</u>.  Although Plaintiff represents that the truck was purchased from Western Peterbilt, the attached contract clearly establishes that Plaintiff purchased the Truck from Western Pacific.  *See* <u>Exhibit A</u>.  The distinction between Western Pacific and Western Peterbilt, if any, is not entirely clear.  As of August 31, 2007, Western Pacific is an inactive corporation.  Washington Secretary of State, Corporate Division – Registration Data Search, Western Pacific Leasing, Inc., http://www.secstate.wa.gov/corps/search_detail.aspx?ubi=601735923 (last visited Dec. 24, 2008).  Nonetheless, this lack of clarity does not change the fact that at the time Plaintiff entered into the contract to purchase the truck, it contracted with an incorporated business entity wholly separate and independent from both PACCAR and Peterbilt.  *See id.*; *see also* Washington Secretary of State, Corporate Division – Registration Data Search, Western Peterbilt Inc., http://www.secstate.wa.gov/corps/search_detail.aspx?ubi=600471845 (last visited Dec. 24,

2008).  Neither PACCAR nor Peterbilt were parties to the contract entered into between Plaintiff and Western Pacific for the sale and purchase of the truck.

On or about September 18, 2007, the truck that Plaintiff purchased from Western Pacific sustained fire damage.  FAC ¶ 7.  Plaintiff now brings WCPA, contract, and tort claims against PACCAR and Peterbilt seeking recovery for the economic loss of the truck.

### III.   LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6)

The legal standard for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") is well established.  "In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well pleaded facts in plaintiff's complaint and views them in a light most favorable to plaintiff."  *Res. Ctr. for Indep. Living, Inc. v. Ability Res., Inc.*, 534 F. Supp. 2d 1204, 1209 (D. Kan. 2008) (citing *Zinermon v. Burch*, 494 U.S. 113, 118 (1990)).  "A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action."  *Id.* (citing *Allen v. Kline*, 507 F. Supp. 2d 1150, 1155 (D. Kan. 2007)).  "'In other words, plaintiff must allege sufficient facts to state a claim that is plausible-rather than merely conceivable-on its face.'"  *Id.* (quoting *Allen v. Kline*, 507 F. Supp. 2d 1150, 1155 (D. Kan. 2007)).  Plaintiff is required to set forth minimum factual allegations in the complaint that support the material elements of its case.  *Id.*

### IV.   ARGUMENTS AND AUTHORITIES

#### A.   Plaintiff's WCPA Claim Fails to State a Cause of Action Against PACCAR and Peterbilt.

Pursuant to Washington case law, there are five elements necessary to establish a WCPA violation: "1) That the defendant engaged in an unfair or deceptive act or practice; 2) occurring in trade or commerce; 3) that affects the public interest; and 4) causes injury; 5) to plaintiff in his

or her business or property." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wash. App. 290, 298 (2002). Plaintiff's WCPA claim fails for two independent reasons: (1) neither PACCAR nor Peterbilt engaged in any deceptive act or practice, and (2) Kansas law governs and precludes Plaintiff's consumer protection based claims.

      1.      **Plaintiff's WCPA claim fails because Defendants did not engage in any deceptive act or practice.**

The first element necessary for Plaintiff to establish a WCPA violation is "[t]hat *the defendant* engaged in an unfair or deceptive act or practice." *Id.* (emphasis added).   The term "deceptive" is not specifically defined in the WCPA; however, "implicit in that term is 'the understanding that the actor *misrepresented* something of material importance.'" *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 165 (2007) (quoting *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wash. App. 722, 730 (1998), *rev'd on other grounds*, 138 Wash. 2d 248 (1999)) (emphasis in original).  Additionally, "for conduct to be an unfair or deceptive practice under the [W]CPA, it must have the capacity to 'deceive a *substantial portion* of the *public*.'" *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1222 (W.D. Wash. 2003) (quoting *Sing v. John L. Scott, Inc.*, 134 Wash. 2d 24, 30 (1997)) (emphasis in original).  In satisfying this "substantial portion of the public" element in a WCPA claim based on an alleged breach of contract, it is insufficient to merely establish that a contract was entered into between plaintiff and defendant.  *Id.* at 1232-33.  It is equally insufficient to merely show that the defendant contracted with additional commercial entities separate from plaintiff.  *See id.* (stating that "the fact that defendant may have engaged in additional commercial dealings does not indicate that its activities have the potential to deceive a 'substantial portion' of the public") (citations omitted). The alleged unfair or deceptive practice must possess the potential to deceive the public at large. *Id.*  "Failure to satisfy even one of the elements is fatal to a [W]CPA claim." *Sorrel*, 110 Wash. App. at 298.

In this case, Plaintiff has failed to allege any unfair or deceptive act by either PACCAR or Peterbilt, thus failing to satisfy the first element of a WCPA claim. In the FAC, the named defendants in this case are PACCAR, Peterbilt, and Western Peterbilt. FAC ¶¶ 2(b.), 2(c.), and 2(d.). However, Plaintiff did not enter into a contract with either PACCAR or Peterbilt. (FAC at ¶ 6 (alleging that Plaintiff purchased the truck from Western Peterbilt)). The contract at issue is between Plaintiff and Western Pacific. *See* Exhibit A. Not only is Western Pacific not a named defendant in this case, but it was also at the time of entering into the contract with Plaintiff a corporate entity wholly separate and independent from both PACCAR and Peterbilt. Plaintiff alleges no direct dealings or interactions with either PACCAR or Peterbilt. Because Plaintiff did not contract with PACCAR or Peterbilt, there were no representations made by Defendants to Plaintiff. Simply stated, Plaintiff has failed to allege any unfair or deceptive act by PACCAR or Peterbilt to Plaintiff that would be likely to deceive Plaintiff, let alone a substantial portion of the public as required by Washington law. Therefore, Plaintiff's WCPA claim fails under Washington law and should be dismissed.

> 2.    **Plaintiff's WCPA claim fails because Kansas substantive law applies to this dispute and prohibits Plaintiff's consumer protection based claim.**

In accordance with Kansas choice-of-law rules, even assuming *arguendo* that a consumer protection based claim is available to Plaintiff under these circumstances, Kansas law would govern such a claim, not Washington statutory law. A choice-of-law analysis is only necessary where differences exist between competing state laws, *i.e.*, there is a conflict of laws. *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 143 (2002) ("[t]here appears to be some differences between Kansas law and California law on one hand and Canadian law on the other. A choice-of-law analysis is therefore necessary."); *see also Miller v. Dorr*, 262 F. Supp. 2d 1233, 1237 (D. Kan. 2003) ("there are differences between Kansas law and North Carolina

workers compensation law ... .  Thus, a choice of law analysis is necessary ... .").  Under the WCPA, "consumer" is defined to include a corporation, thus potentially allowing a corporate entity like Plaintiff to assert a WCPA claim.  WASH. REV. CODE. § 19.86.010(1).  In contrast, under the Kansas Consumer Protection Act ("KCPA"), a corporation is not a consumer as defined by the statute.  *Limestone Farms, Inc. v. Deere & Co.*, 29 Kan. App. 2d 609, 613 (2001) (analyzing the purchase of a planter by a corporation and a limited liability company and finding that "[n]o 'consumer,' as that term is defined in the KCPA, bought the planter, and, therefore, the planter could not have been the subject of a consumer transaction."); *see also* KAN. STAT. ANN. § 50-624(b) (defining consumer and not including corporations within the definition).  Because of this conflict between Washington and Kansas law, a choice-of-law analysis is required.  *Layne Christensen Co.*, 30 Kan. App. 2d at 143; *Miller*, 262 F. Supp. 2d at 1237.

"In making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting."  *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 569 F. Supp. 2d 1189, 1195 (D. Kan. 2008).  "Several Kansas cases have concluded that '"the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum in preferred."'"  *Miller*, 262 F. Supp. 2d at 1237 (citations omitted).  "Generally, the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply."  *Id.*  "[T]he rule in [Kansas] is that the law of the state where the tort occurred-*lex loci delicti*-should apply."  *Ling v. Jan's Liquors*, 237 Kan. 629, 634 (1985).  More specifically, "in an action for recovery of damages for injuries sustained in Kansas which were the result of [an act] in another state, the liability of the defendant is to be determined by the laws of this state."  *Id.* at 634-35.  Stated practically for purposes of the case at hand, if the act causing injury originated in Washington but came to fruition in Kansas, the substantive law of Kansas governs.  *Id.*

Furthermore, and importantly, a statutory consumer protection claim can sound either in tort or in contract.  *See Kitner v. CTW Transp., Inc.*, 53 Mass. App. Ct. 741, 746 (2002) (stating that "[C]laims of unfair or deceptive acts or practices may be founded on activities that more closely resemble either a traditional breach of contract action ... or an action in tort.").  Consumer protection based claims alleging misrepresentations sound in tort.  *See id.* at 747 ("[w]e conclude that the plaintiffs' [statutory consumer protection] claim sounded in tort").

In the FAC, Plaintiff alleges a WCPA violation based on alleged misrepresentations made in the state of Washington that ultimately caused economic damage within the state of Kansas when the truck caught fire.  FAC ¶¶ 6, 12-15.  Although Plaintiff's WCPA claim may have originated in Washington with an alleged misrepresentation at the time of contracting, Plaintiff's economic injury was sustained in Kansas at the time the truck caught fire.  Even assuming *arguendo* that all elements of Plaintiff's WCPA claim exist, the final element-injury to Plaintiff-occurred in Kansas, not Washington.  FAC ¶¶ 14-15.  A consumer protection claim based on an alleged misrepresentation sounds in tort, and under Kansas choice-of-law rules, Kansas substantive law will apply to Plaintiff's action sounding in tort.  *Ling*, 237 Kan. at 634.  Consequently, Kansas law will govern Plaintiff's consumer based cause of action, and under the KCPA, a corporation like Plaintiff is not a consumer as defined by the statute.  *Limestone Farms, Inc.*, 29 Kan. App. 2d at 613.  As a result, under the KCPA, Plaintiff's consumer protection based claim is without merit and should be dismissed.

### B.   Plaintiff's Implied and Express Warranty Claims Fail Because No Privity Exists Between Plaintiff and Defendants.

Pursuant to Washington law, privity of contract is required for both breach of implied and express warranty claims.  *See, e.g.*, *Tex Enters., Inc. v. Brockway Standard, Inc.*, 149 Wash. 2d 204, 214 (2003) (holding that "[f]or all of the reasons discussed above, we hold that implied warranties do not arise out of express representations made by a manufacturer to a remote

7

commercial purchaser absent privity or reliance on some underlying contract.); *see also Thongchoom v. Graco Children's Prods., Inc.*, 117 Wash. App. 299, 307 (2003) (analyzing express warranties and stating that "[g]enerally, contractual privity between the buyer and seller must exist before a plaintiff may maintain an action for a breach of warranty."). In this case, Plaintiff's warranty claims fail because there is no privity of contract between Plaintiff and either PACCAR or Peterbilt. Accordingly, Plaintiff's warranty claims fail under Washington law, and therefore, its second and third causes of action should be dismissed.

### C.     Plaintiff's Strict Liability Claim is Barred by the Economic Loss Doctrine.

Plaintiff's strict liability claim fails because it is barred by the economic loss doctrine, which prohibits claims sounding in tort when the proper remedy lies in contract. In support of its strict liability claim, Plaintiff asserts that Washington law applies. As analyzed above, a choice-of-law analysis is only necessary if there is a conflict between competing state laws. *Layne Christensen Co.*, 30 Kan. App. 2d at 143; *Miller*, 262 F. Supp. 2d at 1237. In the absence of a conflict of state laws, "[a] federal court sitting in diversity must apply the substantive law of the state in which it sits, including the forum state's choice-of-law rules." *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1173 (2008); *see also Gen. Elec. Capital Corp. v. Dodson Aviation, Inc.*, 286 F. Supp. 2d 1307, 1313 (D. Kan. 2003) ("[i]t appears that the laws of Kansas, New York and Connecticut present no conflict on the law which applies to the Guaranties, and the Court will apply Kansas law."). Both Washington[1] and Kansas[2] have expressly adopted the economic loss doctrine; therefore, there is no conflict of laws as it relates to the economic loss doctrine, and thus no need for a choice-of-law analysis. Based on this

---

[1] *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 285 (Wash. Ct. App. 2008). Washington's economic loss rule "applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Id.* "The rule 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract' because 'tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.'" *Id.* (citations omitted). Thus, regardless of which state's law this Court ultimately applies, Plaintiff's consumer protection claims sounding in tort will be barred by the economic loss doctrine.
[2] *See, e.g., Dieker v. Case Corp.*, 73 P.3d 133, 135, 147 (Kan. 2003).

analysis, the economic loss rule as adopted by Kansas courts will apply in this case and prohibit Plaintiff's strict liability claim.  *See Gen. Elec. Capital Corp.*, 286 F. Supp. 2d at 1313 (finding no conflict of laws and applying Kansas law).

Kansas courts have expressly adopted the economic loss doctrine.  *See Dieker v. Case Corp.*, 73 P.3d 133, 135, 147 (Kan. 2003); *Prendiville v. Contemporary Homes, Inc.*, 83 P.3d 1257, 1264 (Kan. Ct. App. 2004); *Nw. Arkansas Masonry, Inc. v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 987 (Kan. Ct. App. 2001); *Jordan v. Case Corp.*, 993 P.2d 650, 651 (Kan. Ct. App. 1999); *Koss Constr. v. Caterpillar, Inc.*, 960 P.2d 255, 260 (Kan. Ct. App. 1998).  As defined, and as applicable to the case at hand, the economic loss doctrine stands for the proposition "that a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves."  *Koss Constr.*, 960 P.2d at 260; *see also Nw. Arkansas Masonry, Inc.*, 31 P.3d at 987 (applying the economic loss doctrine to consumer buyers as well as commercial buyers).  While the doctrine is now given broad application, it was originally designed for purposes of product liability claims.  *Prendiville*, 83 P.3d at 1260, 1264 (extending the application of the economic loss doctrine from traditional product liability claims to construction defect claims).  The primary purpose of the economic loss doctrine is to preclude parties from alleging tort claims in factual situations properly governed by contract law.  *Id.* at 1260.  "The economic loss doctrine is 'the fundamental boundary between contract law, which is designed to enforce the expectancy interest of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.'"  *Id.* [citation omitted].  Within the framework of these legal principles and sought after objectives, Kansas courts have consistently applied the economic loss doctrine to dismiss claims sounding in tort when the circumstances are properly governed by contract law.

The Kansas Court of Appeals first adopted the economic loss doctrine in 1998 in *Koss*, a

product liability action.  *Koss Constr.*, 960 P.2d at 256.  In *Koss*, the plaintiff, a commercial buyer, purchased a Caterpillar vibratory roller from the defendant, Martin Tractor Company, Inc. ("Martin").  *Id.*  While completing a highway construction project, the plaintiff's new roller caught fire and sustained substantial damage.  *Id.*  Plaintiff claimed that defective roller component parts caused the roller's fire, and accordingly, sued both Martin and Caterpillar for negligence, breach of implied warranty, and strict liability.  *Id.*  The district court dismissed plaintiff's claims, finding "that a party may not recover damages for harm to a defective product under negligence or strict liability in tort."  *Id.*  In analyzing plaintiff's claims on appeal, the Kansas Court of Appeals affirmed the district court's decision:

> [W]e conclude that **a commercial buyer of defective goods cannot sue in negligence or strict liability where the only injury consists of damage to the goods themselves**.  Under Kansas law, the economic loss doctrine applies to a claim for damage to the product itself.  Thus, the district court did not err in granting Caterpillar's motion for judgment on the pleadings with regard to Koss' **negligence and strict liability claims**.

*Id.* at 260 (emphasis added).[3]  Thus began the consistent application of the economic loss doctrine by the Kansas courts.

Approximately one year after *Koss*, the Kansas Court Appeals again applied the economic loss doctrine to bar tort claims in circumstances properly governed by contract law. *Jordan*, 993 P.2d at 651.  In *Jordan*, plaintiff brought claims against defendant based on negligence, breach of implied warranty, strict liability, and res ipsa loquitur.  *Id.*  In asserting these claims, plaintiff sought to recover economic losses for the destruction of plaintiff's Case combine when it unexpectedly caught on fire.  *Id.*  Following *Koss*, the *Jordan* district court

---

[3] In adopting the economic loss doctrine, the Kansas Court of Appeals relied heavily on the persuasive reasoning of the United States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986).  *Koss Constr.*, 960 P.2d at 255, 258-59.  "'[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.'"  *Id.* (quoting *East River S.S. Corp.*, 476 U.S. at 871).  "'Damage to a product itself is most naturally understood as a warranty claim.  [] While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain.'"  *Id.* (quoting *East River S.S. Corp.*, 476 U.S. at 872-73).

dismissed plaintiff's claims, and plaintiff appealed.  *Id.*  In analyzing the issues on appeal, the *Jordan* court stated that plaintiff "seeks to recover damages for an injury which consisted only of damage to the combine itself.  Under the rule in *Koss*, the buyer cannot sue in negligence or strict liability under these circumstances."  *Id.* at 651-52.

In *Dieker v. Case Corp.*, 73 P.3d 133, 135, 147 (Kan. 2003), plaintiffs purchased a new Case combine, which was destroyed when it caught fire after only twelve days from the date it was purchased.  Seeking to recover the economic damage to the combine, plaintiffs filed suit alleging negligence, breach of implied warranty, and strict liability.  *Id.*  In identical fashion to *Koss* and *Jordan*, the *Dieker* district court dismissed plaintiffs' tort claims based on the economic loss doctrine, which holding was left untouched by the Kansas Supreme Court on appeal.  *Id.* at 135, 147 (affirming the decision of the trial court on other grounds).  Thus, from 1998 to present, Kansas courts have consistently applied the economic loss doctrine to bar tort claims in circumstances properly governed by contract law.

Like *Koss*, *Jordan*, and *Dieker*, the case presently before this Court involves a buyer of a product that sustained fire damage due to its allegedly defective condition.  FAC ¶¶ 4-7, 29-38; *Koss Constr.*, 960 P.2d at 256; *Jordan*, 993 P.2d at 651; *Dieker*, 73 P.3d at 135.  Likewise, Plaintiff here is suing Defendants on a tort based claim in an attempt to recover economic loss resulting from damage done only to the truck.[4]  FAC ¶¶ 4-7, 29-38; *Koss Constr.*, 960 P.2d at 256; *Jordan*, 993 P.2d at 651; *Dieker*, 73 P.3d at 135.  Consequently, consistent with the analysis

---

[4] Although not entirely clear from the face of the FAC, Plaintiff seemingly alleges that a defective engine and/or engine component part was the cause of the fire.  *See* FAC ¶ 23 (stating, "the leak occurred which ignited the Truck and caused it to burn as a result of catching on fire").  However, the existence or nonexistence of this fact has no bearing whatsoever as to whether Plaintiff is claiming damage to "other property."  Plaintiff's claimed injury is economic damage to the truck itself, not damage to any individual component part therein.  Even assuming for the sake of argument that Plaintiff sought recovery for damage to the engine, as opposed to the truck as a whole, the preclusive effect of the economic loss doctrine would remain unchanged.  Kansas case law is clear: "'[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to "other property" which precludes the application of the economic loss doctrine.'"  *Nw. Arkansas Masonry, Inc.*, 31 P.3d at 988  (quoting *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 252 (1999)).  Having sustained no damage to other property independent from the truck itself, Plaintiff's tort claims are barred by the economic loss doctrine.

and conclusions of the cases cited herein, this Court must dismiss Plaintiff's strict liability claim because it is barred by the economic loss doctrine. *See, e.g., Koss Constr.*, 960 P.2d at 260.

The facts and circumstances of this case confirm that any dispute between the parties is properly governed by contract law. Plaintiff contractually entered into the purchase agreement with Western Pacific for the purchase of the truck on March 28, 2005. *See* <u>Exhibit A</u>. It was this contract that provided Plaintiff the greatest opportunity to assess any potential risks associated with the purchase of the truck and to properly insure against such potential risks, including the risk of fire damage. *See Jordan*, 993 P.2d at 652 ("the economic loss doctrine [] encourages the party best situated to assess the risk of economic loss to insure against it"). Furthermore, Plaintiff and Western Pacific had the freedom to allocate any potential risk of damage to the truck at the time of contracting as they saw fit. *See id.* ("the economic loss doctrine . . . protects a party's freedom to allocate economic risks by contract"). Having contractually allocated risk, Plaintiff must not now be allowed to improperly assert tort claims against Defendants and thereby effectively abrogate the governing terms of the contract and circumvent Kansas law. Plaintiff's attempt in this regard would force this Court to "referee the terms of [the] agreement under tort recovery theories." *Lexington Ins. Co. v. Western Roofing Co.*, 316 F. Supp. 2d 1142, 1149 (D. Kan. 2004) (relying on the analysis of the Kansas case law and applying the economic loss doctrine to bar a negligence claim). Such improper attempts are the exact concern of Kansas courts, which have consistently applied the economic loss doctrine to bar such attempts. Because Plaintiff has asserted a tort claim that cannot stand as a matter of law, its strict liability claim must be dismissed.

## V.    <u>CONCLUSION</u>

Plaintiff's WCPA claim must be dismissed because Defendants did not engage in any deceptive acts or practices and, alternatively, Kansas law applies and precludes Plaintiff's consumer based claims.   Plaintiff's breach of implied and express warranty claims must be dismissed because Plaintiff lacks privity of contract with both PACCAR and Peterbilt.   Finally, Plaintiff's strict liability claim should be dismissed because the economic loss doctrine precludes tort claims where the only injury is economic damage to the property itself.   Because Plaintiff has failed to state a claim upon which relief can be granted, Plaintiff's claims must be dismissed as a matter of law.

Dated: December 24, 2008.

Respectfully submitted,

HINKLE ELKOURI LAW FIRM L.L.C.


By:    __s/ Amy M. Decker_____
          Kenneth R. Lang (13060)
          Amy M. Decker (18739)
          Matthew K. Holcomb (23140)
          8621 E. 21st Street North, Suite 200
          Wichita, Kansas 67206-2991
          Ph: (316) 660-6511
          Fax: (316) 660-6611
          klang@hinklaw.com
          adecker@hinklaw.com
          mholcomb@hinklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 24, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Eldon L. Boisseau, Law Offices of Eldon L. Boisseau, L.L.C., River Park Place, 727 N. Waco, Suite 265, Wichita, Kansas 67203.

Respectfully submitted,

By: _____ s/ Amy M. Decker _____
      Kenneth R. Lang (13060)
      Amy M. Decker  (18739)
      Matthew K. Holcomb (23140)
      HINKLE ELKOURI LAW FIRM L.L.C.
      8621 E. 21st Street North, Suite 200
      Wichita, Kansas 67206-2991
      Ph: (316) 660-6511
      Fax: (316) 660-6611
      klang@hinklaw.com
      adecker@hinklaw.com
      mholcomb@hinklaw.com

388903