IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

K.R. SMITH TRUCKING, LLC,, )
)
           Plaintiff, )
)
v. ) Case No. 08-1351-WEB
)
PACCAR, INC. and PETERBILT )
MOTORS COMPANY, a division of )
PACCAR, INC., and WESTERN )
PETERBILT, INC., )
)
           Defendant. )

MEMORANDUM AND ORDER

Before the court is the defendants' PACCAR Inc. and Peterbilt Motors Company Motion to Dismiss (Doc. 12), and defendant Western Peterbilt, Inc Partial Motion to Dismiss (Doc. 17).

I. Facts

The facts are adopted from the plaintiff's First Amended Complaint (Doc. 10).

1. In approximately 2004, for model release 2005, the defendant PACCAR Inc,. by and through its division Perterbilt Motors Company, designed, manufactured, assembled and / or delivered into the stream of commerce a truck known as the 2005 Model 379 Peterbilt Truck, Serial Number 1XP5DB9X05D841577.

2. On March 28, 2005, K.R. Smith Trucking LLC purchased the truck. The truck was purchased as a low mileage used vehicle from Western Peterbilt, Ind. in Spokane, Washington, with about 42,000 miles on it, and still within the time frame where the defendant PACCAR Inc. or the division Perterbilt Motors Company would provide customer support to operators of the subject truck, including access to service bulletins, manual revisions and website information

and other customer support services.

3. On September 18, 2007 the truck was being operated by owner K.R. Smith during normal and regular operating conditions on Highway I-35 near Lebo, Kansas, when, without warning, the truck caught fire engulfing it in flames. Fortunately, driver K.R. Smith escaped injury from the flames, however, the entire truck was destroyed by the fire.

II. Jurisdiction

Jurisdiction is based on amount in controversy and diversity, pursuant to 28 U.S.C. § 1332(a)(1).

III. Standard

Defendants PACCAR, Peterbilt Motors, and Western Peterbilt have filed a Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), for failure to state a claim. The complaint must contain a short and plain statement showing the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). The court must determine if the complaint "contains enough facts to state a claim to relief that is plausible on its face." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible when the facts alleged lead to the relief requested. Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1247 (10th Cir. 2008). "The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Id. The allegations of a complaint are taken as true unless contradicted, and disputes must be resolved in favor of the plaintiff. Behagen v. Amateur Basketball Ass'n of

U.S.A., 744 F.2d 731, 733 (10th Cir. 1984).

    IV. Discussion

A. Choice of Law

In a diversity action, the court applies the substantive law of the forum state, including the choice of law rules. Klaxon Co. v. Stentor Elec. Mf. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), see also Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). Kansas courts follow the general rule of *lex loci,* the place where the contract is made controls in resolving a contract claim. Safeco Ins. Co. Of America v. Allen, 262 Kan. 811, 822, 941 P.2d 1365 (1997). The only exception to this rule is when the law of another state violates Kansas public policy. Id. In deciding tort claims, Kansas courts follow the rule of *lex loci delicti*, tort claims will be decided by the law of the place where the tort occurred. Ling v. Jan's Liquors, 237 Kan. 629, 634, 703 P.2d 731 (1985). The contract in this case was entered into by the parties in Washington State. The contract did not include a choice of law provision. Therefore, Washington law applies to contract claims. The fire which plaintiff alleges destroyed the truck, occurred in the State of Kansas, therefore, any claims based in tort will be decided by Kansas law.

B. Violation of Washington Consumer Protection Act

Plaintiff PACCAR and Peterbilt Motors company argue that the court must conduct a choice of law analysis at this point as Kansas law and Washington law conflict in the definitions of "consumer". "For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."

Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co., 275 Kan. 698, 730, 71 P.3d 1097 (2003), citing Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Where the application of another state's law is contrary to public policy, Kansas courts will not apply another states's law. Brenner v. Oppenheimer & Co. Inc., 273 Kan. 525, 540, 44 P.3d 364 (2002). Public policy should be "so thoroughly established as a state of public mind so united and so definite and fixed that its existence is not subject to any substantial doubt." Id. at 543, citing Riddle v. Wal-Mart Stores, Inc., 27 Kan.App.2d 79, 86, 998 P.2d 114 (2000).

Kansas law defines a "consumer" as "an individual or sole proprietor who seeks or acquires property or services for personal, family, household, business or agricultural purposes." K.S.A. § 50-624(b). The protection offered to consumers is "limited to individuals and sole proprietors who directly contract with suppliers for goods or services, and is not extended to individuals who promise performance of a corporation contracting with a supplier." Cit Group / Sales Fin. v. E-Z Pay Used Cars, 29 Kan.App.2d 676, 685 (2001). A corporation or similar entity that has suffered an injury cannot sue under the Kansas Consumer Protection Act. Wayman v. Amoco Oil Co., 923 F.Supp. 1322, 1363 (D. Kan. 1996). K.S.A. § 50-623 states that the Kansas Consumer Protection Act is to be construed liberally to promote certain public policies, such as to protect consumers from suppliers who commit deceptive and unconscionable practices, and to protect consumers from unbargained for warranty disclaimers. Under the Consumer Protection Act, Washington law does not use the term "consumer," but instead employs the term "person." "Person" is defined as "natural persons, corporations, trusts, unincorporated associations and partnerships." RCWA § 19.86.010(1). Pursuant to Washington statute, the Consumer Protection Act is to be liberally construed to meet the beneficial purposes

4

of that Act. RCWA § 19.86.920. The purpose of the Washington Act is to govern unfair competition and unfair practices to protect the public and foster fair and honest competition. Id.

The Tenth Circuit has examined the public policy exception to the general rule of lex loci delicti. The Court stated that "every law is an expression of public policy of the state, some higher threshold is needed to prevent the forum's law from being applied in every case." Tucker v. R.A. Hanson Co., 956 F.2d 215, 218 (10th Cir. 1992). The creation of the public policy exception was because "some causes of action were so repugnant to the values of the forum state that the state courts would feel compelled to close their doors to them." Heller v. Menninger Corporation, 2002 WL 32136375, p. 4 (D. Kan. 2002). Relying on the Restatement (Second) of Conflict of Laws § 90, the Tenth Circuit has determined that a "mere difference between the local law rules of the two states will not render the enforcement of a claim created in one state contrary to the public policy of the other." Prince Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1223 (10th Cir. 1991). The Kansas Supreme Court has determined the public policy exception applies when the application of the other state's law would thwart or defeat the public policy objectives underlying the Kansas law. St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc., 245 Kan 258, 272, 777 P.2d 1259 (1989).

Kansas and Washington define "consumer" differently, as Washington's description encompasses a larger category of consumers. Specifically, the Washington Act includes corporations, whereas the Kansas Act does not. The difference in law does not rise to the level of repugnant. The objectives of the Kansas law is to protect consumers from suppliers who commit deceptive acts and unconscionable practices. K.S.A. § 50-623(b). Although applying Washington law to this case would entitle the plaintiff to sue, whereas the Kansas courts would

5

not, the objective of the Act, to protect consumers, would not be violated. Further, Washington has an interest in applying its law to this action as the truck was purchased there and there are significant business contacts with the State. The Washington CPA targets unfair trade practices with Washington business or with Washington citizens. Applying a broader definition of "consumer" does not defeat the public policy of the Kansas Act. Therefore, for the claims based in the Consumer Protection Act, Washington law applies.

All three defendants argue that the plaintiff's claim under the Washington Consumer Protection Act should be dismissed as plaintiff PACCAR, Peterbilt Motors Company, and Western Peterbilt did not commit an unfair or deceptive act under Washington law. A violation of the Washington Consumer Protection Act has five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 785-793, 719 P.2d 531 (Wash. 1986). The first two elements may be established in two ways. First, if an act violates a statute defining an unfair or deceptive act in trade or business, it is a per se unfair trade practice. Id. at 785-86. The second way to establish the first two elements is to show an unfair or deceptive practice in trade or commerce. Id.. All five elements must be alleged to support a WCPA claim. Id. at 784.

"A breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Id. at 790, citing Lightfoot v. MacDonald, 86 Wash.2d 331, 334, 544 P.2d 88 (1976). "However, it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Id., citing McRae v. Bolstad, 101

Wash.2d 161, 676 P.2d 496 (1984).  The Hangman court set out the factors for the court to consider to determine if there is a public interest in a private dispute: (1) were the alleged acts committed in the course of defendant's business?  (2) Did defendant advertise to the public in general?  (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others?  (4) Did plaintiff and defendant occupy unequal bargaining positions?  Hangman, 105 Wash.2d at 790-91.  The four factors are not dispositive, and it is not necessary that all are present.  Id.

In the case at hand, the purchase of the truck, in the State of Washington, would constitute trade or commerce.  The plaintiff alleged the truck caught fire and was a complete loss, alleging injury to property. The plaintiff has alleged facts to support the second and fourth element of the Washington Consumer Protection Act.

Plaintiff alleges there were representations made that the truck was fit for the transportation of commercial goods in commerce, although the defendant knew of defect or defects in the engine.  The plaintiff alleges such representations were made in the conduct of business, and rise to the level of an unfair or deceptive act or practice.  For conduct to be an unfair or deceptive practice under the Consumer Protection Act, it must have the capacity to deceive a substantial portion of the public.  Segal Co. Inc. v. Amazon.com, 280 F.Supp.2d 1229, 1222 (W.D.Wash. 2003).  The Washington Court has defined "deceptive" as "the practice misleads or misrepresents something of material importance.  Nhuyen v. Doak Homes, Inc., 140 Wash.App. 726, 734 (2007).  Whether particular actions are deceptive are a question of law. Dombrosky v. Farmers Ins. Co. Of Washington, 84 Wash.App. 245, 260, 928 P.2d 1127 (1996). In Potter v. Wilbur-Ellis Co., the court determined that a material fact that was known by the

seller, and not communicated to the buyer may be classified as unfair or deceptive act due to its inherent capacity to deceive.  62 Wash.App. 318, 327-28, 814 P.2d 670 (1991).

Unfair or deceptive act or practice regarding the sale of motor vehicles may occur in connection with advertisements for the vehicle or representations made by the defendant regarding the vehicle, in connection with the sales transaction, or following delivery of the vehicle.  <u>Dempsey v. Joe Pignataro Chevrolet Inc.</u>, 22 Wash.App. 384, 589 P.2d 1265 (1979). Statutory violations can be shown by evidence of affirmative misrepresentations by the defendant regarding the vehicle, the defendant's failure to disclose material facts about the vehicle to the plaintiff, and the defendant's failure to comply with warranties on the vehicle.

Although the plaintiff's complaint contains limited facts, the plaintiff does allege that the defendants made representations that the truck was fit for a particular purpose, and the defendant did not disclose known defects.  Since this case is concerned with the sale of goods, it is a consumer transaction, and more likely to implicate the public interest than a private dispute. <u>USA Gateway Travel, Inc. v. Gel Travel, Inc.</u>, 2006 WL 3761359, p. 8 (W.D. Wash. 2006). Viewing the facts in favor of the plaintiff, the plaintiff has alleged facts to state a claim that the defendant committed a  deceptive act or practice which could have an  impact on the public interest.   The plaintiff has made somewhat conclusory allegations at this point that the defendants made representations that the vehicle was fit for a particular use and did not disclose a defect.  The plaintiff has not specified if the representations were made in the contract between the parties, the actions of the seller, advertisements, or in solicitation.  Although the plaintiff's allegations on this issue are weak, at the motion to dismiss stage, the court will not dismiss for failing to plead with sufficient specificity.  The plaintiff will be allowed to develop this particular

issue through discovery.

Finally, the plaintiff must allege facts to show causation. The plaintiff has alleged the truck was purchased, and the defendants did not disclose known defects which was the cause of the fire. At this stage of the proceedings, the plaintiff has plead sufficient facts to show causation.

C.  Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

The defendants argue there is no privity of contract between the plaintiff and the defendants, therefore, the implied and express warranty claims fail. The plaintiff argues there is privity of contract as the defendants are the sellers of the truck.

Article 2 of the UCC apply to contracts for the sale of goods. RCWA § 62A.2-102. Implied warranty of merchantability applies to sales by merchants. RCWA § 62A.2-314. The goods must be fit for the ordinary purpose for which such goods are used. RCWA § 62A.2-314(2)(c). The implied warranty of fitness for particular use arise when the buyer informs the seller of the intended use, and relies on the seller's expertise in the purchase. RCWA § 62A.2-315.

A "vertical non-privity plaintiff" is a buyer who is in the distributive chain, but who did not buy the product directly from the defendant. Tex Enterprises, Inc. V. Brockway Standard, Inc., 149 Wash.2d 204, 209, 66 P.3d 625 (2003), citing JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 11-2, at 399 (5th ed.2000). Vertical privity controls warranty issues between a remote manufacturer and the ultimate purchaser. Touchet Valley Grain Growers, Inc. V. Opp & Seibold General Const. Inc., 119 Wash.2d 334, 345, 831 P.2d 724 (1992).

In <u>Baughn v. Honda Motor Co., Ltd.</u>, 107 Wash.2d 127, 727 P.2d 655 (1986), the court stated that contractual privity between buyer and seller traditionally has been required before a plaintiff may sue under the UCC. <u>Id</u>. at 151. Since the plaintiff filed suit against the manufacturer and not the seller, the court ruled there was no privity, and dismissed the case. <u>Id</u>. The court created an exception to the privity requirement for implied warranties in <u>Touchet Valley</u>, 119 Wash.2d 334. The court allowed a vertical non-privity plaintiff to recover when the plaintiff was the intended third party beneficiary of the implied warranty that the manufacturer gave to its dealer. A third party beneficiary is defined as "a person who is not a party to a contract but who may benefit from the contract's performance." BLACKS LAW DICTIONARY 63 (Pocket Edition 2000). In <u>Touchet Valley</u>, the court considered the facts that the manufacturer knew the purchaser's identity, the purpose for the goods, which was a grain storage building, and the requirements for the building. <u>Id.</u> at 346. The manufacturer then designed the building knowing the exact specifications, delivered the components to Touchet Valley, and then assisted the contractors in attempting to fix the building. <u>Id.</u> at 346-47. The court also relied on <u>Kadiak Fisheries Co. v. Murphy Diesel Co.</u>, 70 Wash.2d 153, 422 P.2d 496 (1967). In <u>Kadiak Fisheries</u>, the court stated:

> "Murphy Diesel knew the identity, the purpose, and requirements of Alaska Pacific's customer - Kadiak. It engineered and constructed the motor to meet certain specifications, e.g., the bed of the Jaguar, furnished to it not only by Alaska Pacific but by one of its own regional sales representatives. Although it invoiced the motor through Alaska Pacific, it shipped the motor directly to Kadiak. Some communications were carried on directly between Kadiak and the factory before and after shipment. An official of the company, the regional sales representative, and a factory service man visited the Jaguar on various occasions before and during installation of the motor, and the service man participated in adjustments and corrections for the final trial run. After the fire and after further mechanical troubles developed Murphy Diesel furnished new parts and dispatched factory service men to correct the situation, at the behest of Alaska

> Pacific as well as Kadiak. Under these circumstances, it is beyond dispute that Alaska Pacific's purchase of the motor from Murphy Diesel was upon the consideration that a merchantable motor, fit and suitable for the marine purposes of Kadiak, would be supplied. Kadiak thus became the beneficiary of the contract, with Alaska Pacific as the conduit through which the duty of ordinary care and the implied warranties of merchantability and fitness flowed." Id. at 164-65.

The Touchet Valley and Kadiak Fisheries cases show that for a non-privity, third party beneficiary plaintiff to maintain a claim under the theory of implied warranty, there must be significant contacts between the manufacture and the beneficiary. The plaintiff in this case has not alleged facts to show that such contacts existed. The plaintiff alleges only that the defendants knew or had reason to know how the truck would be used when it was manufactured, and the truck was defective on the date of its sale or delivery by the defendants, and also when it was sold to the plaintiff. The plaintiff has not presented facts that there was privity of contract between the plaintiff and the defendants, nor has the plaintiff presented facts alleging it would qualify as a third party beneficiary, the only exception to the privity of contract. The defendants' motion to dismiss on implied warranty is therefore granted.

D. Breach of Express Warranties by Affirmation, Promise, Description or Sample

Express warranties are created in three different manners: "(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." RCWA § 62A.2-313.

Contractual privity is also required when a buyer tries to recover for breach of express warranty. Braughn v. Honda Motor Co., Ltd., 107 Wash.2d 127, 151, 727 P.2d 655 (1986). However, the Braughn court went on to explain that the privity requirement is relaxed when a manufacturer makes express representations, in advertising or otherwise. Id.

In this case, the plaintiff argues that an express warranty existed and was breached by the manufacturer. The defendants argue there is no privity of contract, therefore, the express warranty claims should be dismissed. As stated above, the privity requirement is relaxed in regard to express warranty claims. The plaintiff alleges the defendants made representations and affirmations and breached the same, resulting in a breach of express warranty. Considering the standard at this stage, the plaintiff has alleged sufficient facts for an express warranty claim. The defendants' motion to dismiss on this claim is denied.

E. Strict Liability

The Kansas courts have adopted the economic loss doctrine set out in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Koss Construction v. Caterpillar, Inc., 25 Kan.App.2d 200, 960 P.2d 255, rev. denied 265 Kan. 885 (1998). In Koss, the court held that a commercial buyer of defective goods could not sue in negligence or strict liability when the only injury consisted of damage to the goods. Id. at 207. In Jordan v. Case Corp., the court extended the ruling in Koss to consumers, not just commercial buyers. 26 Kan. App.2d 742, 744, 993 P.2d 650 (1999). The economic loss doctrine has been applied to a wide variety of cases to "prevent a party from asserting a tort remedy in circumstances governed by the law of contracts." Pendiville v. Contemporary Homes, Inc., 32 Kan.App.2d 435, 438, 83 P.3d 1257 (2004). The court stated "the economic loss

12

doctrine is 'the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.'" Id at 438-39, quoting Barnett, Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis, 40 S.C. L.Rev. 891, 894 (1989).

The defendants request dismissal of the strict liability claims as the economic loss doctrine applies in Kansas, and recovery is barred. The plaintiff states that the strict liability claim is raised as an alternate theory, and wishes to preserve the claim until the conclusion of discovery. The plaintiff has not met the standard pleading requirement for a motion to dismiss. The plaintiff must allege facts to state a claim that is plausible on its face under Kansas law. The economic loss doctrine prevents a consumer or commercial buyer from suing in tort when the claims are based in contract.

As a housekeeping matter, even if the court were to apply Washington law regarding this issue, the result would remain the same. Washington law states that when parties have entered into a contractual relationship, and the only loss is economic loss, the economic loss rule bars the complaining party from asserting tort remedies. Alejandre v. Bull, 159 Wash.2d 674, 682-83, 153 P.3d 864 (2007). The party is limited to contractual remedies. Id. When a defective product injures separate property or a person, tort remedies may be appropriate. Griffith v. Centrex Real Estate Corp., 93 Wash.App. 202, 213, 969 P.2d 486 (1998). The plaintiff has not alleged facts of damage to any other property or a person. The defendants' motion to dismiss the strict liability claim is granted.

V. Conclusion

IT IS THEREFORE ORDERED, pursuant to the reasons stated above, defendants' PACCAR Inc. and Peterbilt Motors Company Motion to Dismiss (Doc. 12) is GRANTED in part and DENIED in part, and defendant Western Peterbilt, Inc. Partial Motion to Dismiss (Doc. 17) is GRANTED in part and DENIED in part. Plaintiff's claim for breach of implied warranties and plaintiff's claim for strict liability are DISMISSED.

SO ORDERED this 23rd day of October, 2009 at Wichita, Kansas.

    s/ Wesley E. Brown
Wesley E. Brown, U.S. Senior District Judge