IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K R SMITH TRUCKING LLC,          )
                                 )
              Plaintiff,         )
vs.                              )      Case No. 8-CV-01351-WEB-KGG
                                 )
PACCAR Inc and PETERBILT MOTORS  )
COMPANY, a division of PACCAR, Inc,  )
and Western Peterbilt, Inc.,     )
                                 )
              Defendants.        )
_____)

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS PACCAR INC AND PETERBILT MOTORS COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

PACCAR Inc and Peterbilt Motors Company (hereinafter collectively referred to as "Peterbilt" unless independently noted otherwise), by and through their counsel of record, and pursuant to Fed. R. Civ. P. 56 and D. Kan. Rule 56.1, submit the following Memorandum in Support of Defendants PACCAR Inc and Peterbilt Motors Company's Motion for Summary Judgment (hereinafter "Peterbilt's Memorandum"). In support of Peterbilt's Motion for Summary Judgment (filed concurrently herein and hereinafter "Peterbilt's Motion"), Peterbilt states as follows:

### I.   INTRODUCTION AND BACKGROUND.

In this lawsuit, Plaintiff[1] seeks recovery for fire damage to its Peterbilt Model 379 truck. Plaintiff purchased the truck used from Co-Defendant Western Peterbilt, Inc. in Spokane, Washington, on March 28, 2005. Over two years later, on September 18, 2007, Plaintiff's truck sustained fire damage while its driver/owner, Kenneth Smith, was traveling near Lebo, Kansas.

---

[1] Throughout this memorandum, the term "Plaintiff" will be used to refer to both Plaintiff K R Smith Trucking LLC and the person Kenneth R. Smith, owner of K R Smith Trucking LLC, unless independently noted otherwise.

Plaintiff claims that Peterbilt is liable for the fire damage to the truck.  Plaintiff's claims are based on the Washington Consumer Protection Act ("WCPA") and express warranty.[2]

Peterbilt moves for summary judgment because the undisputed material facts demonstrate Plaintiff lacks sufficient evidence to prove either its WCPA claim or its breach of express warranty claim.  More specifically, Plaintiff's WCPA claim fails because Plaintiff cannot sustain its burden of proof on all five required elements of a WCPA claim.  Plaintiff cannot show any unfair or deceptive act by Peterbilt, fails to demonstrate how the complained of actions occurred in Peterbilt's trade or commerce, and cannot establish that Peterbilt's actions affect the public interest.  As to the express warranty claim, the undisputed material facts establish that Plaintiff did not rely on nor was it aware of any advertising or marketing materials from Peterbilt, nor does Peterbilt's alleged advertisements amount to anything beyond mere puffery, opinion, or commendation concerning Peterbilt's products.  For these reasons, more fully set forth below, summary judgment is appropriate.

## II.    UNCONTROVERTED MATERIAL FACTS.

For purposes of summary judgment, the following facts are uncontroverted:

1.     The truck at issue is a 2005 Model 379 Peterbilt (Serial Number 1XP5DB9X05D841577).  (Sales Invoice, attached hereto as Exhibit A).

2.     Before Plaintiff purchased the truck, it was leased and operated by Boeing. (Deposition Transcript of Kenneth R. Smith (hereinafter "Smith Dep.") 19:9-19, attached hereto as Exhibit B).

3.     Plaintiff, an Oregon resident, purchased the truck used from Western Peterbilt, Inc., in Spokane, Washington, on March 28, 2005.  (Plaintiff's Answers to Defendant PACCAR

---

[2] Plaintiff's breach of implied warranty claim and strict liability claims were dismissed by this Court's Order of October 23, 2009.  (Dkt. 21).

Inc's and Peterbilt Motors Company's First Set of Interrogatories to Plaintiff at 4, Answer to Interrogatory No. 4, attached hereto as Exhibit C).

4.     Peterbilt did not advertise the specific truck to Plaintiff.  (Exhibit B, Smith Dep. 37:17-20).

5.     Plaintiff did not have any contact with Peterbilt prior to, at the time of, or after the truck's purchase.  (Exhibit B, Smith Dep. 26:18-27:18; 117:20-25).

6.     Plaintiff saw Peterbilt/PACCAR generic advertisements in The Official Publication of the Owner-Operator Independent Drivers Association ("OOIDA"), and in advertisements posted on roadside billboards.  (Exhibit B, Smith Dep. 35:20-37:20; 38:23-39:3).

7.     Peterbilt's advertisements, however, did not induce Plaintiff to contact Western Peterbilt, Inc. or purchase the truck.  (Exhibit B, Smith Dep. 38:19-22).

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

"The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  An issue of fact is material if it is the legal element of the claim as identified by the substantive law governing the case such that its presence or absence might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party meets this initial burden, summary judgment is appropriate as a matter of law against the non-moving party "who fails to make a showing sufficient to establish the existence of ***an*** element essential to that party's case, and on which the party will bear the

burden of proof at trial." *Celotex*, 477 U.S. at 322 (emphasis added).  In making a sufficient showing, the non-moving party must go "beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

## IV.    ARGUMENTS AND AUTHORITIES

**A.    Plaintiff's WCPA Claim Fails Because the Undisputed Facts Establish that Plaintiff Lacks Sufficient Evidence to Prove Its Claim.**

**1.    The legal standard for Plaintiff's WCPA claim.**

Under Washington law, there are five elements necessary to establish a WCPA violation: "1) [t]hat the defendant engaged in an unfair or deceptive act or practice; 2) occurring in trade or commerce; 3) that affects the public interest; and 4) causes injury; 5) to plaintiff in his or her business or property."  *Sorrel v. Eagle Healthcare, Inc.*, 110 Wash. App. 290, 298 (2002).  To sustain its burden of proof, Plaintiff is required to meet all five WCPA elements listed above. *Robinson v. Avis Rent A Car System, Inc.*, 106 Wash. App. 104, 113 (2001) ("[t]o establish a violation of the CPA, a private plaintiff must establish five elements").  "***Failure to satisfy even one of the elements is fatal to a [W]CPA claim***."  *Sorrel*, 110 Wash. App. at 298 (emphasis added*)*.  Because the undisputed facts in this case show that Plaintiff cannot satisfy all five elements of its WCPA claim, summary judgment is proper.

**2.    The uncontroverted material facts establish Peterbilt did not engage in any unfair or deceptive act or practice.**

The term "deceptive" is not specifically defined in the WCPA; however, "implicit in that term is 'the understanding that the actor *misrepresented* something of material importance.'" *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 165 (2007) (quoting *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wash. App. 722, 730 (1998), *rev'd on other grounds*, 138 Wash. 2d 248 (1999)) (emphasis in original).  Additionally, "for conduct to be an unfair or deceptive

practice under the [W]CPA, it must have the capacity to 'deceive a *substantial portion* of the *public*.'" *Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1222 (W.D. Wash. 2003) (quoting *Sing v. John L. Scott, Inc.*, 134 Wash. 2d 24, 30 (1997)) (emphasis in original).  In satisfying this "substantial portion of the public" element in a WCPA claim based on an alleged breach of contract, it is insufficient to merely establish that a contract was entered into between plaintiff and defendant.  *Id.* at 1232-33.  It is equally insufficient to merely show that the defendant contracted with additional commercial entities separate from plaintiff.  *See id.* ("the fact that defendant may have engaged in additional commercial dealings does not indicate that its activities have the potential to deceive a 'substantial portion' of the public") (citations omitted).  The alleged unfair or deceptive practice must possess the potential to deceive the public at large.  *Id.*

On December 24, 2008, Peterbilt moved to dismiss Plaintiff's WCPA claim on multiple grounds.  (Dkt 12).  This Court denied in part Peterbilt's motion, ruling that at the pleading stage, Plaintiff had sufficiently pled a WCPA claim.  (Order at 8-9 (Dkt. 21)).  In its Order, this Court opined, based on Washington law, that "[u]nfair or deceptive act or practice regarding the sale of motor vehicles may occur in connection with advertisements for the vehicle or representations made by the defendant regarding the vehicle, in connection with the sales transaction, or following delivery of the vehicle."  (*Id.* at 8).  This Court noted that "[a]lthough the plaintiff's complaint contains limited facts, the plaintiff does allege that the defendants made representations that the truck was fit for a particular purpose, and the defendant did not disclose known defects."  (*Id.*).  "The plaintiff has not specified if the representations were made in the contract between the parties, the actions of the seller, advertisements, or in solicitation."  (*Id.*). Nonetheless, this Court ruled that "plaintiff will be allowed to develop this particular issue through discovery."  (*Id.* at 8-9).  Therefore, the issue before this Court at this summary

judgment phase is whether Plaintiff has set forth any facts or evidence gathered through the course of discovery establishing that Peterbilt committed a deceptive act or practice in a contract, through actions as a seller, through advertisements, or in solicitation.  Because the undisputed material facts answer this question in the negative, summary judgment is appropriate.

### a.    There is no contract between Plaintiff and Peterbilt.

It is uncontested that Peterbilt did not enter into a contract with Plaintiff for the purchase of the truck.  (Uncontroverted Material Fact (hereinafter "UMF") ¶ 3).  Rather, Plaintiff purchased the used truck directly from the dealer, Western Peterbilt, Inc.  (UMF ¶ 3).  Therefore, there can be no unfair or deceptive act or practice in a contract that does not exist, and Plaintiff fails to establish a WCPA against Peterbilt on the basis of any contract.

### b.    Peterbilt did not sell the truck to Plaintiff.

In identical fashion, it is also uncontested that Peterbilt did not sell the truck to Plaintiff.  (UMF ¶ 3).  Rather, Western Peterbilt, Inc. sold the truck to Plaintiff.  (UMF ¶ 3).  Thus, Peterbilt committed no unfair or deceptive acts as a seller of the subject truck because they in fact were not the seller, nor did they have any involvement in the sale of the truck to Plaintiff.  Therefore, Plaintiff is unable to establish a WCPA claim against Peterbilt on the basis of any action as a seller.

### c.    Peterbilt's advertisements do not amount to a deceptive act or practice under the WCPA.

#### i.    No inducement.

In *Fisher v. World-Wide Trophy Outfitters, Ltd.*, 15 Wash. App. 742 (1976), the Washington Court of Appeals analyzed the requirements of sustaining a WCPA claim based on advertising.  In *Fisher*, the advertisements that gave rise to a WCPA claim included the

following *guarantees* in certain letters and brochures given by defendant directly to the plaintiff hunters:

> It was represented that there was a 100% Chance for each hunter to obtain a shot at a trophy moose; . . . a 100% Chance for each hunter to obtain a shot at a trophy caribou; . . . a 50% Chance for each hunter to obtain a shot at a grizzly bear.

*Id.* at 745.  Importantly, in finding an unfair or deceptive act or practice through advertisement, the *Fisher* court noted that "[t]hese advertisements ***induced*** plaintiff to initially contact defendant."  *Id.* at 748 (emphasis added).  Thus, in addition to illustrating the types of express advertisements and guarantees that give rise to a WCPA claim, the *Fisher* court emphasizes the importance of being induced by the alleged deceptive act, *i.e.*, the advertising.

The emphasis on and requirement of inducement by a deceptive act under a WCPA claim based on advertising is also exemplified in *Crane & Crane, Inc. v. C & D Elec., Inc.*, 37 Wash. App. 560, 563 (1984).  The facts in *Crane & Crane, Inc.* involved a series of blatant, false representations in advertising:

> In its telephone book yellow pages ad, C & D falsely represented it was a specialist in warehouse and commercial wiring with over 12 years' experience. On its business card, C & D falsely represented it was a subsidiary of Crowder Refrigeration.  []  Mr. Carpenter falsely represented he was an employee of C & D when in fact he was an employee of Mid-Valley.  []  Finally, Mr. Carpenter told Mr. Humborg this work was safe and legal.

*Id.* at 563.  Even with such blatant misrepresentations, the *Crane & Crane, Inc.* court held that unless such misrepresentations induced the plaintiff, there can be no WCPA claim.  *Id.*  "***Absent evidence of inducements, the false representations cannot be the basis for allowing a recovery under the CPA.***"  *Id.* (emphasis added).  Thus, *Fisher* and *Crane & Crane, Inc.* establish the requirement of inducement by the advertising and also illustrate the types of advertising that give rise to a WCPA claim.

Unlike the finding by the *Fisher* court that "[t]hese advertisements induced plaintiff to initially contact defendant" (*Fisher*, 15 Wash. App. at 748), and the requirement noted by the *Crane & Crane, Inc.* court that false representations induce plaintiff to act (*Crane & Crane, Inc.*, 37 Wash. App. at 563), the alleged advertisements in this case did not induce Plaintiff to either contact Western Peterbilt, Inc. or Peterbilt or to purchase the truck. (UMF ¶ 7). Plaintiff described Peterbilt's advertisements in generic fashion. (Exhibit B, Smith Dep. 35:20-37:20; 38:6-10; 38:23-39:3). He did not describe specifically any advertisement that he saw nor state where he saw it other than on "billboards" and in the OOIDA publication. In short, Plaintiff fails to identify any evidence of allegedly false or misleading statement attributable to PACCAR or Peterbilt.

Further, Plaintiff did not even consider Peterbilt's advertisements for purposes of purchasing the truck. (UMF ¶¶ 7) (Exhibit B, Smith Dep. 38:20-22). Rather, Plaintiff simply examined apparent photographs of Peterbilt trucks in general for the purpose of opining, "that's a good looking truck." (Exhibit B, Smith Dep. 38:20-22). Plaintiff admitted with regard to Peterbilt's advertisements, "I've only owned – I won't own anything but a Peterbilt, so ***I don't even look***. ***I don't look at their advertisements other than 'that's a good looking truck***.'" (Exhibit B, Smith Dep. 38:19-22) (emphasis added). Therefore, based on Plaintiff's own testimony, there was no inducement, and Plaintiff's WCPA fails because it cannot establish a deceptive act or practice.

### ii.  *No express guarantees relating to the truck.*

Furthermore, unlike the advertisements in *Fisher* and *Crane & Crane, Inc.*, which contained express guarantees regarding particular products and/or services, Peterbilt did not even advertise the specific truck to Plaintiff. (UMF ¶ 4). Plaintiff admitted that Peterbilt "didn't advertise that truck in an advertisement that I know of." (UMF ¶ 4). In contrast to an

8

advertisement of the specific truck, Plaintiff's advertisement/solicitation evidence consists of two venues: (1) alleged general advertisements as to Peterbilt's products in Plaintiff's monthly magazine subscription to the official publication of OOIDA, and (2) Peterbilt's advertisements allegedly posted on roadside billboards.[3]  (UMF ¶ 6).[4]  According to Plaintiff, the content of such advertising is "[i]t's the class of trucks.  You know like buying a Cadillac or Lincoln, it's the Cadillac of the trucking industry, that type of advertisement.  It doesn't use the word Cadillac, but that's what it means."  (Exhibit B, Smith Dep. 38:6-10).  This evidence fails to establish a WCPA claim.  There are no express guarantees regarding the truck, and such advertising falls far short of that described in *Fisher*.

### iii.  Nothing beyond mere puffery, opinion, or commendation.

In addition to failing to satisfy the inducement requirement and align the types of advertising in this case with those in *Fisher* and *Crane & Crane, Inc.*, Plaintiff also fails to establish that Peterbilt's actions amount to anything more than mere puffery, opinion, or commendation.  In *Newkirk v. McMullen*, No. 52962-5-I, 2004 WL 2335354, *3-4 (Oct. 18,

---

[3] The location of these alleged billboards is unknown.  In other words, they may not have even been along Washington highways.

[4] On September 1, 2010, after Plaintiff's deadline for supplementing disclosures had passed and after Plaintiff had responded to Peterbilt's request for admission regarding advertising materials, wherein Plaintiff responded that he had no additional advertising materials, Plaintiff's counsel provided thirteen pages from what appears to be a periodic publication entitled First Class.  FIRST CLASS (Fall/Winter 2006).  This untimely publication is irrelevant and inadmissible (both for purposes of trial and summary judgment) for multiple reasons.  First, as indicated on the cover page, the publication is from the Fall/Winter 2006 edition.  *See id.*  Plaintiff fails to establish how information in a 2006 publication induced its actions or is in any way relevant to the contract here entered into on March 28, 2005.  Plaintiff purchased the truck nearly eighteen months prior to the Fall/Winter 2006 edition of First Class; therefore, it is impossible that Plaintiff was induced by any advertising in the fall/winter of 2006 for a truck purchased in March of 2005.  Furthermore, Plaintiff never mentioned having received or reviewed this publication when questioned during his deposition.  Therefore, the source of the First Class publication is unknown.

Second, only one page out of the thirteen in the First Class publication contains what appear to be general advertisements for Peterbilt trucks.  Model 379 trucks, like the one at issue here, are notably absent from this marketing page.  Nonetheless, the remaining pages contain articles, stories, and testimonials by third parties, such as truck operators and drivers and business owners that have no association with Peterbilt.  Such publications fail to satisfy the "occurring in trade or commerce prong" of a WCPA claim.  *Fidelity Mortgage Corp. v. Seattle Times Co.*, 131 Wash. App. 462, 468 (2005) (recognizing defendant's quarterly rate chart published in a news article as distinct from paid advertising and thus not satisfying "the conduct of any trade or commerce" requirement of the WCPA).  Therefore, Plaintiff's publication material from "FIRST CLASS" is irrelevant and inadmissible.

2004 Wash. Ct. App.), plaintiff claimed that defendant car dealer's advertisement describing the specific vehicle as an "'excellent driver'" was an unfair and deceptive act under the WCPA.[5] The court affirmed the trial court's grant of defendant's summary judgment motion, finding that "[u]nder the circumstances, [the dealer's] advertisement for the 10-year old [vehicle] as an excellent driver was not false, deceptive, or misleading in violation of the CPA." *Id.* at *4.  This case law indicates Washington's reluctance to equate mere puffery in marketing campaigns with a deceptive act or practice under the WCPA.

Applying this law to the facts here reveals that Peterbilt's alleged general advertisements on billboards and in magazines, like the advertising in *Newkirk*, is nothing more than puffery, opinion, or commendation relating to Peterbilt's products in general.  Finding such advertising deceptive would no doubt lead to absurd results, requiring virtually every television advertisement, billboard, mail solicitation, magazine advertisement and the like to be immediately pulled from the Washington market place because of its "deceptive" capacity. Statements relating to Peterbilt's products in general do not amount to deceptive marketing campaigns for the used truck in this case, much like the *Newkirk* court's holding as to the used car advertisement.  Accordingly, Plaintiff has failed to establish a deceptive act or practice.

### iv.  No capacity to deceive a substantial portion of the public.

Washington law also requires that "to constitute a deceptive practice, the advertisement need only have a tendency or Capacity to deceive a substantial portion of the purchasing public." *Fisher*, 15 Wash. App. at 748.  Plaintiff has failed to set forth any facts showing that Peterbilt's alleged general advertising in trade magazines and billboards "have a tendency or Capacity to

---

[5] Although the plaintiff in *Newkirk* alleged a violation of the WCPA through RCW § 46.70.180(1), there is no reason why the court's analysis into what constitutes an unfair or deceptive act or practice is not applicable generally in all WCPA claims. *Newkirk*, No. 52962-5-I, 2004 WL 2335354, *3.

deceive a substantial portion of the purchasing public." *Id*.  There are no facts indicating that anyone or anything other than Plaintiff has allegedly been deceived.[6]  Absent meeting this burden of proof, Plaintiff's WCPA claim fails with regard to any assertions concerning Peterbilt's alleged advertisements.

<b>d.      There is no failure to disclose a material fact.</b>

In addition to basing its WCPA claim on contract, sales, advertisements, and soliciting, Plaintiff can also base a WCPA claim on alleged failures by Peterbilt to disclose material facts associated with the sale of the truck.  Indeed, this Court has recognized "that a material fact that was known by the seller, and not communicated to the buyer may be classified as [an] unfair or deceptive act due to its inherent capacity to deceive."  (Dkt. 21 at 7-8 (citing *Potter v. Wilbur-Ellis Co.*, 62 Wash. App. 318, 327-28 (1991)).  Under Washington law, "[f]ailure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act due to its inherent capacity to deceive."  *Potter*, 62 Wash. App. at 674 (quoting *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wash. App. 39, 51 (1976)).  However, as this case law clearly demonstrates, the requirement to disclose material facts arises in the context of a seller/buyer relationship.  Because no seller/buyer relationship existed between Plaintiff and Peterbilt, there was no duty of disclosure.

In *Nguyen v. Doak Homes, Inc.*, the plaintiffs alleged a WCPA claim against a home builder on the basis of an alleged failure to disclose a material defect in the home relating to the existence of mold.  140 Wash App. 726, 728, 734 (2007).  The defendant built the home.  *Id.* at 78.  Plaintiffs, however, did not purchase the home directly from the defendant, but purchased the home from the first purchaser who originally purchased the home from the defendant.  *Id.* at

---

[6] See *infra* § IV.A.2.d. and the discussion on the non-existence of other incident evidence.

728.  The defendant moved for summary judgment of the plaintiffs' WCPA claim, arguing "that [the defendant's] representatives had never had any contact with [plaintiff]."  *Id.*  Recognizing that "[a] seller's failure to disclose material facts to the purchaser in a real estate transaction may support a CPA claim," the court ultimately found that "[plaintiff] has not identified any basis for her claim that [defendant] failed to comply with an obligation to disclose to her any material defects about the house."  *Id.* at 734.

Like the defendant in *Nguyen*, Peterbilt in this case had no contact with Plaintiff relating in any way to Plaintiff's purchase of the truck.  (UMF ¶¶ 3, 5).  Rather, Plaintiff's direct contact was with Western Peterbilt, Inc. and its sales staff.  (UMF ¶¶ 3, 5).  Like *Nguyen*, Peterbilt in this case did not actually sell the product at issue to the Plaintiff; rather, Western Peterbilt, Inc. sold the truck to Plaintiff, which truck was previously owned and operated by Boeing.  (UMF ¶¶ 2, 3).  Thus, like *Nguyen*, the facts of this case do not support any WCPA claim because Peterbilt did not sell the truck and thus had no duty to disclose anything.

Not only is there no duty of disclosure, there were also no material facts to disclose even assuming such a duty did exist.  What cannot be overlooked is that Plaintiff has failed to demonstrate what the specific material facts are that Peterbilt allegedly failed to disclose in a transaction that Peterbilt had nothing to do with.  Stated differently, while Plaintiff claims that Peterbilt knew of a certain defect in its truck and failed to disclose that defect, Plaintiff has failed to even identify a specific defect.  Indeed, Plaintiff's engineering expert, Jason P. Wollum, does not include the word "defect" in his expert report.  Rather, Mr. Wollum opines "that the cause of the fire is ***accidental*** in nature and was a result of a vibration damaged electrical conductor contacting the steel reinforced fuel line at the area where the arc hole was observed on the fuel line," and ultimately advises that he is "closing this file."  (Exhibit D, Jason P. Wollum, PE Report at 4 (emphasis added)).

In addition, Plaintiff fails to identify a single other incident involving substantially similar facts and circumstances as those in this case by which Peterbilt would have been placed on notice of this, as of yet, unspecified defect.  As it relates to the fuel line chaffing theory, Mr. Smith testified that this allegation originated with Robert Harsch, the tow truck driver that assisted Mr. Smith shortly after the fire.  (Exhibit B, Smith Dep. 88:22-89:7).  However, Mr. Harsch (1) admits that he is not a cause and origin expert; (2) admits that he never inspected the truck either before or after the fire; and (3) admits he conducted no investigation of the incident truck or other trucks.  (See Deposition Transcript of Robert Harsch ("Harsch Dep.") (2) 10:24-11:4; 18:2-8; 18:21-19:2; 19:3-6; 22:8-19; 24:7-9; 34:2-6; and 34:10-23, attached hereto as Exhibit E).  Furthermore, Mr. Harsch, a truck mechanic, is not aware of any other fire involving Peterbilt trucks, or particularly Peterbilt trucks' fuel lines.  (Exhibit E, Harsch Dep. 34:2-6).  Therefore, Mr. Harsch lacks any foundation for opining that this particular fire was caused by chaffing of the fuel line.  Put simply, Plaintiff has not a shred of evidence that indicates Peterbilt was on notice of a defect rising to the level of a material fact under a WCPA claim.  Accordingly, Plaintiff's WCPA claim based on failure to disclose a material fact fails.

In sum, to succeed in its WCPA claim, Plaintiff must establish some act or practice of Peterbilt was unfair or deceptive.  The undisputed facts prove that Peterbilt did not enter into a contract with Plaintiff nor did they sell the truck to Plaintiff.  Further, Peterbilt's alleged advertising in trade magazines and occasional roadside billboards does not trigger applicability or establish a violation of the WCPA.  Plaintiff was not induced to act or refrain from acting in any way; the types of advertising do not rise to the level of advertising necessary for a WCPA claim; the alleged advertising amounts to mere puffery, opinion, or commendation at best; and, such advertising does not have a capacity or tendency to deceive a substantial portion of the public.

The undisputed material facts also establish that Plaintiff's WCPA claim based on a failure to disclose material facts as to an alleged defect fails because Peterbilt did not sell the truck to Plaintiff, Plaintiff has not identified any specific defect, and Plaintiff has not established that Peterbilt even had any knowledge of this unspecified defect in the form of other incidents or otherwise. Therefore, on the independent basis that Plaintiff fails to establish a deceptive act or practice, Plaintiff's WCPA claim fails and should be summarily dismissed.

> **3.     The uncontroverted material facts establish that the alleged advertisements at issue did not occur in Peterbilt's trade or commerce.**

The second element necessary for Plaintiff to sustain its WCPA claim is that the actions complained of, *i.e.*, the advertising, occurred in Peterbilt's trade or commerce. *Sorrel*, 110 Wash. App. at 298. Plaintiff lacks any admissible evidence establishing that the alleged advertising on occasional billboards and in Plaintiff's monthly OOIDA magazines occurred in Peterbilt's trade or commerce. Absent such evidence, Plaintiff's WCPA claim based on advertising materials fails.

In *Fidelity Mortgage Corp. v. Seattle Times Co.*, 131 Wash. App. 462, 468 (2005) plaintiff sued defendants (a newspaper and two mortgage companies) alleging a violation of the WCPA because of a quarterly rate chart posted in the weekly newspaper. The plaintiff alleged that the quarterly rate chart was deceptive and contained misleading information. *Id.* Analyzing the alleged advertising material, the *Fidelity* court reasoned as follows: "[a]s a threshold matter, the quarterly rate chart ***is not paid advertising***. It is a news article, and as such it is not published 'in the conduct of any trade or commerce.'" *Id.* (emphasis added). Thus, the test for determining whether a publication (*i.e.*, alleged advertising) occurs in trade or commerce is to evaluate whether that publication is ***defendants'*** paid advertising.

In this case, Plaintiff alleges that Peterbilt advertises on occasional billboards and in the OOIDA magazine.   (UMF ¶ 6).   Apart from this assertion, however, Plaintiff offers no admissible evidence, *e.g.*, the OOIDA magazines at issue, authentic photographs of the alleged billboards at issue, etc., establishing that the complained of advertising is indeed Peterbilt's paid advertising, as distinguished from information pertaining to Peterbilt but posted by disassociated third parties.   The *Fidelity* court was careful to distinguish information pertaining to a certain party from information that was paid advertising by that party.   Under the facts here, there can be no meaningful analysis of whether the complained of billboards and magazines actually contained paid advertising by Peterbilt, as distinguished from mere information pertaining to Peterbilt, because Plaintiff has failed to offer a shred of admissible advertising evidence.   Absent such evidence, Plaintiff has not and cannot establish that Peterbilt's complained of actions occurred in Peterbilt's trade or commerce.   The trade or commerce element is a requirement of a WCPA claim under Washington law, and absent this showing, Plaintiff's WCPA claim based on Peterbilt's advertisements must fail for this reason alone.

4.   **The uncontroverted material facts establish that Peterbilt's actions do not affect the public interest.**

The third element of Plaintiff's WCPA claim requires a showing that Peterbilt's actions, *i.e.*, the alleged unfair or deceptive acts or practices, affect the public interest.   *Sorrel*, 110 Wash. App. at 298.   "Even a private plaintiff must 'show that the acts complained of affect the public interest.'   This element fulfills the legislative statement of purpose, that the Act 'shall not be construed to prohibit acts or practices which . . . are not injurious to the public interest.'" *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 176-77 (2007) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 788 (1986)).   "The private right of action to enforce RCW 19.86.020 is more than a means for vindicating the rights of the individual

plaintiff.  In order to prevail in a private action under the CPA, the plaintiff must show that the challenged acts or practices affect the public interest."  *Dix v. ICT Group, Inc.*, 160 Wash. 2d 826, 837 (2007).  When determining whether the public interest is affected in a consumer transaction, Washington courts consider five factors:

> (1) Were the alleged acts committed in the course of defendant's business?[7]  (2) Are the acts part of a pattern or generalized course of conduct?  (3)  Were repeated acts committed prior to the act involving plaintiff?  (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff?  (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Stephens*, 138 Wash. App. at 177 ("where the acts complained of involve 'essentially a consumer transaction' such as the sale of goods, the following five factors are relevant") (citation omitted).  "However the dispute arises, '***it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest***.'"  *Id.* at 178 (quoting *Hangman Ridge*, 105 Wash. 2d at 790) (emphasis added).  "Conduct has an impact upon the public interest if [] the defendant, by unfair or deceptive acts or practices in the conduct of trade or commerce, ***has induced the plaintiff to act or refrain from acting***."  *Eastlake Const. Co., Inc. v. Hess*, 102 Wash. 2d 30, 50 (1984) (emphasis added).  The undisputed material facts show that Plaintiff has failed to meet this burden.

Here, Plaintiff has not identified a single incident involving the same or similar facts at issue in this case that affected someone or something other than Plaintiff.  Consequently, Plaintiff cannot establish that Peterbilt's acts and practices in this case, even assuming *arguendo* such acts and practices are deceptive or unfair, have affected or will affect anyone or anything

---

[7] Plaintiff fails to meet this element of the test for all the reasons set forth above, *.e.g.*, no evidence exists to establish Peterbilt's actions occurred in trade or commerce.

other than Plaintiff, which proffer falls short of showing a "*likelihood that additional plaintiffs have been or will be injured in exactly the same fashion*."  *Stephens*, 138 Wash. App. at 177.  Additionally, as set forth above, Plaintiff was not in any way induced to purchase the truck by Peterbilt's acts and practices.  (UMF ¶ 7).  Plaintiff has thus failed to establish that the public interest is affected, and for this additional, independent reason, summary judgment on Plaintiff's WCPA claim is proper.

**B.      Plaintiff's Express Warranty Claim Fails Because the Undisputed Facts Establish that Plaintiff Lacks Sufficient Evidence to Prove Its Claim.**

**1.   Legal standard for Plaintiff's breach of express warranty claim.**

As this Court has already noted,

> Express warranties are created in three different manners: '(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.  (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.  (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.'

(Dkt. 21 at 11 (quoting RCWA § 62A.2-313)).  Privity of contract is required for express warranty claims.  *Thongchoom v. Graco Children's Prods., Inc.*, 117 Wash. App. 299, 307 (2003) (analyzing express warranties and stating that "[g]enerally, contractual privity between the buyer and seller must exist before a plaintiff may maintain an action for a breach of warranty.").  However, and also as previously noted by this Court, "the privity requirement is relaxed when a manufacturer makes express representations, in advertising or otherwise."  (Dkt. 21 at 12 (citing *Braughn v. Honda Motor Co., Ltd.*, 107 Wash. 2d 127, 151 (1986)).  This Court has already found that privity of contract does not exist in this case (Dkt. 21); thus, for purposes of the present Motion, the legal standard and question is whether the undisputed material facts demonstrate that Plaintiff has failed to establish that Peterbilt made an express representation to

Plaintiff "in advertising or otherwise." (*Id.*). Because the facts indeed show that Peterbilt made no express representations to Plaintiff through its alleged advertising materials or otherwise, there is no applicable exception to the privity requirement for Plaintiff's express warranty claim, and summary judgment is proper.

First, the "otherwise" prong of the "in advertising or otherwise" analysis noted in *Braughn* can be quickly dispensed with under the facts of this case. There are no "otherwise" facts. The only facts Plaintiff asserts in support of its breach of express warranty claim are Peterbilt's alleged advertisements. There was no direct communication or solicitation between Peterbilt and Plaintiff. (UMF ¶¶ 4, 5) (*See* Exhibit B, Smith Dep. 74:24-75:3). As previously established, Peterbilt did not in any way market the specific truck to Plaintiff. (UMF ¶ 4). Thus, there are no "otherwise" facts.

**2.      Plaintiff's breach of express warranty claim fails because Plaintiff did not rely on Peterbilt's advertising nor was he aware of any advertising of the truck.**

The alleged marketing materials/advertisements in this case were not even directed at the specific truck that is the subject matter of this lawsuit, as Plaintiff admitted that Peterbilt "didn't advertise that truck in an advertisement that I know of." (UMF ¶ 4). Furthermore, Washington law is clear that "[b]efore one may recover from a manufacturer for a loss allegedly based upon a breach of an express warranty contained in an advertisement, he must demonstrate that he justifiably relied upon some statement contained in the advertisement." *Arrow Transp. Co. v. A. O. Smith Co.*, 75 Wash. 2d 843, 849 (1969); *see also Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC*, 114 Wash. App. 639, 649 (2003) ("plaintiff 'must be a party whom the defendant could expect to act upon the representation ***and must rely on it***'" (citations omitted) (emphasis added)). *Compare Baughn*, 107 Wash. 2d at 152 ("[a]lthough the UCC does not require a plaintiff to show reliance on the manufacturer's statements, he or she must at least be aware of such

representations to recover for their breach.").[8]  Regardless of whether reliance upon advertising, awareness of the advertising, or both, are required, the facts of this case demonstrate that Plaintiff neither relied upon nor had knowledge of any marketing or advertising by Peterbilt. Plaintiff admittedly did not consult any of Peterbilt's advertising for purposes of purchasing the truck.  (UMF ¶ 7).  Rather, Plaintiff, a loyal fan of Peterbilt trucks, admitted that with regard to Peterbilt's advertising, "I've only owned – I won't own anything but a Peterbilt, so *I don't even look*.  *I don't look at their advertisements other than 'that's a good looking truck*."  (Exhibit B, Smith Dep. 38:19-22) (emphasis added).  Given this testimony, Plaintiff simply cannot establish any reliance upon Peterbilt's alleged marketing materials.

Plaintiff also fails to establish any awareness of Peterbilt's marketing materials as it relates to the truck because, in fact, Plaintiff has no such marketing materials.  When asked at his deposition whether he knew "what Peterbilt had represented as far as this truck in an advertisement?," Plaintiff answered that "[t]hey didn't advertise that truck in an advertisement that I know of."  (UMF ¶ 4).  These material facts conclusively establish that Plaintiff did not rely on any of Peterbilt's advertisements and that Plaintiff was not aware of any advertisements relating specifically to the truck.  Therefore, and for this reason alone, Plaintiff's express warranty claim fails.

> **3.      Plaintiff's breach of express warranty claim fails because the alleged**

---

[8] Although the UCC (RCWA § 62A.2-313) does not, as the *Baughn* court notes, explicitly require a showing of reliance, nothing in § 62A.2-313 specifically abrogates Washington's common law requirement of reliance.  Under RCWA § 4.04.010, "[t]he common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington [], shall be the rule of decision in all the courts of this state."  "The legislature has the power to supersede, abrogate, or modify the common law."  *Potter v. Washington State Patrol*, 165 Wash. 2d 67, 76 (2008).  "However, we are hesitant to recognize an abrogation or derogation from the common law absent clear evidence of the legislature's intent to deviate from the common law."  *Id.* at 76-77.  "'It is a well-established principle of statutory construction that "[t]he common law . . . ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose."'"  *Id.* at 77 (citations omitted).

Although the *Baughn* court may include some inconsistent language from that found in *Arrow Transp. Co.* and *Urban Dev., Inc.*, nothing in § 62A.2-313 abrogates the reliance requirement under Washington common law. Therefore, Peterbilt submits that reliance remains a necessary showing for Plaintiff in this case.

**"statements" in Peterbilt's alleged advertising amount to Peterbilt's opinion
or commendation, at most, and not representations relating to the truck.**

Plaintiff's express warranty claim also fails on the independent basis that Peterbilt's alleged marketing materials amount to mere puffery, if anything at all, and not to any express representations regarding the truck.  Peterbilt's alleged "advertisements" in this case are similar, if not identical to, the types of advertisements at issue in *Baughn*.  In *Baughn*, the plaintiff argued that certain statements by Honda amounted to representations under the UCC.  *Baughn*, 107 Wash. 2d at 152.  In conjunction with the sale of its mini-bike, Honda "described the mini-bike as a good one for children and stated that 'You meet the nicest people on a Honda.'"  *Id.* However, the Washington Supreme Court rejected the notion that such statements amount to representations under the UCC.  *Id.* ("[s]uch statements do not rise to the level of express representations for which recovery under the UCC is allowed.").  In properly characterizing such statements, the *Baughn* court found that "they appear to be Honda's opinion or commendation regarding minibikes rather than affirmations of fact about the goods."  *Id.* (affirming the district court's dismissal of plaintiff's breach of express warranty claim based on advertising).

Taking Plaintiff's testimony at face value, the facts of this case are almost identical to the facts and advertising statements in *Baughn*.  In this case, the only "statement" by Peterbilt that Plaintiff is aware of is that "[i]t's the class of trucks.  You know like buying a Cadillac or Lincoln, it's the Cadillac of the trucking industry, that type of advertisement.  It doesn't use the word Cadillac, but that's what it means."  (Exhibit B, Smith Dep. 38:6-10).  Notably, absent Plaintiff's say-so, Plaintiff is unable to present any documentation or other evidence regarding such marketing/advertising materials.  Regardless, even assuming *arguendo* Plaintiff's testimony is accurate, such statements by Peterbilt amount to mere puffery or Peterbilt's opinion or commendation about its products as a whole, and not the particular truck at issue here.  Just like

the *Baughn* court's conclusion that the description of the "mini-bike as a good one for children and [] that 'You meet the nicest people on a Honda'" is nothing more than "opinion or commendation regarding minibikes rather than affirmations of fact about the goods," the statements in this case that the truck is like the "Cadillac of the trucking industry" must also be characterized as mere opinions or commendations of Peterbilt trucks in general, rather than the specific truck at issue here. *Baughn*, 107 Wash. 2d at 152; Exhibit B, Smith Dep. 38:6-10. Such statements do not rise to level of representations necessary to establish an express warranty under Washington law. Holding otherwise would no doubt lead to absurd, arbitrary, and broad ramifications relating to appropriate marketing, mandating that any seller that so much as describes a product as "nice" is in danger of creating an express warranty. Certainly such a result is not the intent of the Washington Legislature, and such a result is not appropriate under these facts. Accordingly, Plaintiff's express warranty claim fails because the statements, if any, were mere puffery, opinion, or commendation.

## V.     CONCLUSION.

For all the above reasons, Peterbilt requests that this Court grant Peterbilt's Motion, and that this Court enter an order dismissing with prejudice Plaintiff's WCPA and express warranty claims.

Dated: October 22, 2010.

Respectfully submitted,

HINKLE ELKOURI LAW FIRM L.L.C.


By:   s/ Amy M. Decker
    Kenneth R. Lang (13060)
    Amy M. Decker (18739)
    Matthew K. Holcomb (23140)
    8621 E. 21st Street North, Suite 200
    Wichita, Kansas 67206-2991
    Ph: (316) 631-3125
    Fax: (316) 630-8375
    klang@hinklaw.com
    adecker@hinklaw.com
    mholcomb@hinklaw.com
    *Attorneys for Defendants PACCAR Inc and Peterbilt Motors Company*


## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Eldon L. Boisseau, Law Offices of Eldon L. Boisseau, L.L.C., River Park Place, 727 N. Waco, Suite 265, Wichita, Kansas  67203 and Patrick Murphy, Wallace, Saunders, Austin, Brown & Enochs, Chartered, 400 O.W. Garvey Center, 200 W. Douglas, Wichita, Kansas 67202.

By:   s/ Amy M. Decker
    Kenneth R. Lang (13060)
    Amy M. Decker (18739)
    Matthew K. Holcomb (23140)
    HINKLE ELKOURI LAW FIRM L.L.C.
    8621 E. 21st Street North, Suite 200
    Wichita, Kansas 67206-2991
    Ph: (316) 631-3125
    Fax: (316) 630-8375
    klang@hinklaw.com
    adecker@hinklaw.com
    mholcomb@hinklaw.com

513061