# REPORT

of

Richard A. Dyer

KR SMITH TRUCKING, LLC
v.
PACCAR

May 21, 2010

PREDICATION

Ms. Amy M. Decker of the Hinkle Elkouri Law Firm of Wichita, Kansas contacted me concerning this matter. I was advised that the litigation involved a truck fire that occurred on September 18, 2007, near Lebo, Kansas. We agreed that I would serve as an expert consultant concerning this matter and I would attempt to determine the origin, source of ignition, material first ignited and the propagation paths for the fire. I would also serve as an expert concerning any other fire related issue.

MATERIALS REVIEWED

1. First amended complaint.
2. PACCAR, Inc. and Peterbilt Motors Company's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint.
3. Plaintiff's photographs.
4. Kenneth R. Smith deposition.
5. Dealer warranty claims.
6. Peterbilt operator's manual.
7. Expert disclosure of Charles Jacobs.
8. Expert disclosures of Jason P. Wollun.
9. Vehicle engine harness routing photograph showing the left side of the engine and the top of the engine.
10. Vehicle wiring schematic.

INSPECTION

1. Subject Vehicle.

## REVIEW OF FILE INFORMATION

My review of the first amended complaint disclosed that the plaintiff is an interstate trucking business. The complaint went on to disclose that on September 18, 2007 the subject truck was being operated by the owner, KR Smith during normal and regular operating conditions on Interstate 35 when the truck caught on fire near Lebo, Kansas. The complaint noted that Mr. Smith was not injured in the fire.

My review of the plaintiff's photographs disclosed that the heaviest fire damage was located in the left or driver's side of the engine compartment. I noted that most of the alloy material at the top and the left side of the engine hood was melted away due to the fire.

The deposition testimony of Kenneth R. Smith disclosed that there were some items that were transferred from his old truck to the subject vehicle at the time of the purchase. This included a light bar on the sleeper, a light bar on the cab, and the light bars that were mounted on the air cleaner. He also noted that the locomotive horns were transferred from the old tractor to the new vehicle. He testified that on the day of the incident that after crossing I-35 at the Beto Junction he began to smell diesel fuel. He explained that he looked at his fuel pressure gauge and he noted that it was going the full spectrum. He stated that he brought the vehicle to a stop and he set the brakes. He testified that he grabbed his dog and stepped outside of the truck because it was filling with smoke. He went on to explain that the smoke was gray in color. He said that he did not see any flames within the cab when he exited the vehicle. He stated that in about 20 seconds after he exited the truck is when the vehicle ignited under the left side of the engine with blue and orange flames. He testified that he had noticed nothing unusual prior to the events that he had already explained. He testified that there were numerous aftermarket items that were installed on the truck such as a CB radio. Other items that were installed included a light on top

of the cab. They said that there had been no repairs within the engine compartment along the left side of the engine. He did note that the radiator had been replaced approximately 3,000 miles prior to the fire. He testified that he had never experienced a fire with any truck that he has driven. He stated that when the fire initiated that it exploded.

My review of the dealer warranty claims did not reveal any item that would indicate a previous problem along the left side of the engine.

I reviewed the expert disclosure of Charles T. Jacobs of Anderson Investigations, LLC. That document noted that his burn pattern evaluation established the origin in the left, rear portion of the engine. His report noted that oxidation patterns on the engine block showed the upward extension of fire from the approximate location of the Electronic Control Module (ECM). It was noted that the ECM was mounted on the left rear portion of the engine. He reported that the wiring harness passed next to a steel reinforced fuel line just above the ECM. He noted that the fuel line extended horizontally along the left side of the engine. He reported that there were fire damaged and partially melted copper electrical conductors in the area of the ECM and he noted that he believed these conductors were from the wiring harness. He reported that a small hole was observed in the fuel line and that it was created by an electrical arc. He stated that the only question was did the arc occur during or prior to the fire. He noted that this was the only arcing noted on any fuel line. He concluded that the fire occurred due to the chaffing of a fuel line and an active electrical conductor.

I reviewed the expert disclosures of Jason T. Wollun of Henderson Engineers. He noted in his report that he had inspected the vehicle. He reported that the four batteries for the vehicle were located below the driver side door. He stated that the batteries were intact with little or no exterior damage. He did state that the damage was observed on a smaller gauge wire leading

from the positive battery terminal. He noted that the insulation of the smaller gauge wire was partially melted over the entire length of the conductor. He stated that the damage that was observed indicates that an overload current was applied to this conductor. He noted that there was electrical arcing involving an engine bolt on the underside of the truck. He also observed that the cables leading from the starter and the alternator were severed by electrical arcing near the left, rear of the engine. He reported that several areas of electrical arcing were observed on the wiring routed through the left, rear area of the engine compartment. He noted that electrical arcing was observed on larger cables, such as those leading from the alternator and smaller conductors, such as those leading from the power distribution box. He noted that there was electrical arcing on the grounding conductors to the truck frame. He also observed electrical arcing on a steel reinforced fuel line routed through the left rear engine area. He reported that he compared the areas of electrical arcing to the location of the arc hole found in the fuel line and he determined that much of the arcing surrounded the arc hole in the fuel line. He reported that this indicates that the arc hole in the fuel line was the ignition source for the fire. He reported that the electrical arcing observed on the battery cables and the engine bolt were a result of the fire. He concluded that the cause of the fire is the result of a vibration damaged electrical conductor contacting the steel reinforced fuel line at the area where the arc hole was observed involving the fuel line. He concluded that the hole in the fuel line allowed fuel and fuel vapors to escape into the engine compartment where the vapors were ignited either by the electrical arc or by other items within the engine compartment that operate at capable temperatures.

I reviewed documents that disclosed the PACCAR engine harness routing along the left side of the engine for this model of truck. I noted that the factory routing of the electrical cables

do not come into contact with the return fuel line where the plaintiff's experts reported observing the arc hole.

VEHICLE INSPECTION

My vehicle inspection took place at the Great West Insurance tow lot in South Sioux City, Nebraska on May 10, 2010. I noted that the front of the vehicle at the right or passenger side corner of the bumper and the headlight assembly had little evidence of heat or smoke damage. The greatest amount of heat at the front of the truck was sustained to the left corner of the bumper which was the driver side of the vehicle. The alloy flashing above the radiator was partially melted on the left side and was intact at the top, right corner.

I noted that the right, front fender had the original paint color of the vehicle. The right, front tire had not sustained any significant fire damage. There was very minor damage on the inboard side of the tire.

The right side of the engine hood had sustained heat damage at the upper portions of the hood but there was paint remaining on the lower portion of the hood.

The passenger door had sustained partial melting at the top portion of the window opening and at the door below the window opening. There was a significant amount of body paint remaining on the door at the time of my vehicle examination.

The right side of the sleeper cab had most of the body paint remaining. The alloy fuel tank located below the sleeper cab was intact and had no evidence of fire damage.

The rear of the sleeper cab had heat damage to the paint at the center and at the upper portion of the cab.

The rear tires had no evidence of fire damage. There was no burning of the paint or oxidation sustained to the frame rails at the rear of the tractor.

The fuel tank along the left side of the vehicle and located below the sleeper cab had no evidence of fire damage.

My inspection in the interior of the sleeper portion of the cab disclosed that it had sustained significant fire damage. It was evident from the burn patterns that the fire had communicated from the truck cab to the sleeper portion of the vehicle. The greatest fire damage in this portion of the vehicle was at the upper levels near the underside of the sleeper cab roof and the least damage was at the lower levels such as where the mattress was situated. The forward portion of the fiberglass top of the sleeper cab was consumed but the fiberglass near the rear of the sleeper cab was intact.

The cab of the truck in the area of the front seat had sustained heavy fire damage. Most of the fiberglass of the cab roof was consumed during the course of the blaze. The interior side of the passenger door had sustained significant fire damage. The greatest damage of this door was toward the instrument panel and the lesser damage was toward the rear of the door. Some fiberglass of the cab roof remained above the passenger's door. The fire patterns at the door were indicative of the fire spreading from the front to the rear within the cab of the vehicle.

A significant portion of the seat cushion material of the passenger seat was consumed but there was greater remaining material at the passenger seat than at the driver's seat.

There was no window glass remaining in the windshield area and the combustible bulkhead between the cab and the engine compartment was consumed. The alloy heater coil on the right side of the cab had some melting but it was mostly intact.

The driver's door had sustained heavy fire damage and much of the alloy material had melted away. Most of the door frame was not melted and had fallen from the door frame but was still connected to the vehicle. There was no remaining fiberglass material within the door frame.

A section of combustible material remained in front of the heater coil but there was no remaining combustible material at the bulkhead of the left side of the cab.

The right side of the engine disclosed that there was a significant amount of wiring insulation, hoses and other combustible items that remained at the time of my vehicle inspection. I observed yellow paint on the right side of the Caterpillar engine. Alloy materials at the upper portion of the right side of the engine had sustained significant melting. The paint at the right frame rail was present and there was no evidence of oxidation. The oil filter that extended below the engine was present and it was not significantly fire damaged. The inboard side of the radiator had sustained partial melting.

The left, front tire had sustained significant fire damage and both the outboard and inboard side walls were mostly consumed. The alloy wheel had not sustained any significant melting.

I observed that at the right, rear corner of the cab and behind the engine hood, the alloy material was mostly intact. At the left, rear corner of the engine compartment and rearward of the hood, the alloy material was mostly melted away.

My inspection at the front of the engine disclosed that the belts were not present. I noted alloy material at the location where the belts had been located indicating that they had burned away during the fire and prior to the alloy material dripping to the area of the fan assembly.

My inspection along the left side of the engine disclosed there was some remaining paint at the forward part of the engine but at the rear of the engine there was little paint that remained and there was significant oxidation. There was significant melting of alloy material at the upper portion of the engine toward the left rear corner of the engine compartment.

I observed that a fuel line had extended from the alloy fuel filter that was mounted at the forward portion of the engine and extended rearward along the left side of the engine. At the location near the oil dipstick there was a hole that appeared to be melted through the steel braided line.

My inspection of the battery box that was located under the driver's door disclosed that there was no significant fire damage in that area. There was one smaller gauge conductor with red insulation within the battery compartment that had sustained heat damage the entire length of the cable that was present. It was severed under the vehicle so it could not be traced.

I noted that there were multiple locations where there was electrical arcing of the various copper conductors at the left, rear portion of the engine compartment. This included a battery cable in the area of the inboard side of the left frame rail. There were smaller conductors that had also sustained electrical arcing.

<u>ANALYSIS</u>

My analysis of all of the available data to me establishes that the fire originated within the engine compartment and along the left side of the engine. There is evidence of significant arcing of the copper conductors at the left, rear quadrant of the engine compartment. The return fuel line had a melted hole which was most probably caused by electrical arcing and the line was severed which establishes that diesel fuel was involved as one of the fuel sources for this fire at some point during the fire.

The photographs of the factory routing of fuel lines and electrical circuits eliminates the wiring harness and the return fuel line of being in contact. If there was chaffing and if an electrical conductor arced against the return fuel line, then the wiring harness had to be in a different position than shown in the factor routing photographs.

I noted that there were three steel brackets mounted to the engine that supported the wiring harness. The rear bracket at the left side of the engine was present and securing the wiring harness at the time of my vehicle inspection. The two brackets located along the top of the engine were not present at the time of my vehicle inspection. This would indicate that the location of the wiring harness was changed following the factory installation.

The evidence of electrical arcing does not establish the source of ignition for the fire. There were multiple events of electrical arcing involving this fire. The only assertions, facts or evidence that indicate that the return fuel line arc was at the point of origin for this fire was that the driver smelled diesel and the fuel gauge fluctuated prior to the driver discovering the fire. If an electrical event initiated this sequence of events, an electrical fire could have been ongoing within the engine compartment which was not noticed by the driver until the arc in the fuel line occurred which would result in the release of diesel fuel.

CONCLUSIONS

1. The origin of the fire was along the left side of the engine and at the left rear quadrant of the engine compartment.
2. The source of ignition for this fire was electrical arcing. There were numerous points of electrical arcing at the area of origin and the specific arc that served as the source of ignition for this fire is undetermined.
3. The material first ignited in this fire was either electric cable insulation or diesel fuel vapor.
4. Once the fire originated within the engine compartment and propagated along the left side of the engine, the fire also propagated through the bulkhead and into the cab of

the vehicle. The area of last significant involvement was in the sleeper cab section of the truck.

5. If the plaintiff's scenario is correct concerning the sequence of events for this fire, the wiring harness was most probably rerouted after the vehicle left the factory. The wiring harness was not at a location that coincided with the truck design. If the wiring harness was installed in accordance with the vehicle design, the wiring harness cables could not have come into contact with the return fuel line. This would eliminate an arc at the return fuel line from being the ignition source for this fire.

6. The cause of this fire should be properly classified as undetermined.

ATTACHMENTS

1. My professional resume.
2. My case testimony list.
3. My rate schedule.
4. My photograph log concerning my vehicle inspection.

Richard A. Dyer

Richard A. Dyer

# RICHARD "SMOKEY" DYER

## EMPLOYMENT HISTORY:

- 1970-1972, U.S. Naval Officer with duties in the field of flammable liquid transportation.
- 1972-1973, Insurance Underwriter, CNA Insurance, Kansas City, Missouri.
- 1973-1976, Chief Investigator, Missouri State Fire Marshal's Office, Jefferson City, Missouri.
- 1976-1978, Assistant Professor of Fire Science, University of Central Missouri (Central Missouri State University), Warrensburg, Missouri.
- 1978-1987, Assistant Fire Chief, Lee's Summit, Missouri Fire Department.
- 1977-1980, Investigator, National Fire Associates, Inc., Kansas City, Missouri.
- 1980-1987, Chief Investigator, National Fire Associates, Inc., Kansas City, Missouri.
- 1987-Present, Self-employed fire consultant.
- 1987-2000, Chief, Lee's Summit, Missouri Fire Department.
- 2000-Present, Chief, Kansas City, Missouri Fire Department.
- 2010-Present, CEO, Metropolitan Ambulance Service Trust.

## RELATED EXPERIENCE:

Volunteer or part-time fire fighter starting in 1965 with four different Missouri fire departments. Served as Firefighter, Captain, Training Officer and Assistant Chief and was involved in suppressing hundreds of fires for many years.

## INVESTIGATION EXPERIENCE:

As Chief Deputy State Fire Marshal and Chief Investigator for the Missouri State Fire Marshal's office supervised and directed fire investigations involving arson, bombing, fraud, homicide and accidental fires. Personally investigated approximately one hundred fire scenes per year. As an investigator for National Fire Associates, Inc. investigated approximately eighty fires per year. As a career Assistant Fire Chief, investigated the cause and origin of numerous fires during each year. As chief of a career fire department had the ultimate responsibility of enforcing the Uniform Fire Code, including investigations. Currently serving as Chief of Department of an urban fire department with the responsibility of enforcing the International Fire Code including the fire investigation provisions. Have served as a consulting fire expert in both state and federal courts on many

occasions concerning both civil and criminal matters. Have served as a court appointed expert by the United States District Court in Wichita, Kansas.

**EDUCATION:**

A.S., Fire Science, Penn Valley Community College, Kansas City, Missouri.

B.S., Business Administration, University of Missouri at Columbia, Missouri.

M.S., Public Service Administration, University of Central Missouri (Central Missouri State University), Warrensburg, Missouri.

Have studied toward Education Specialist degree at University of Central Missouri.

Executive Fire Officer graduate, National Fire Academy, Emmitsburg, Maryland.

**CERTIFICATIONS:**

State of Missouri Licensed Emergency Medical Technician.
State of Missouri Certified Fire Investigator.
State of Missouri Certified Fire Instructor II.
Chief Fire Officer Designation-Commission of Chief Fire Officer Designation.

**TRAINING:**

Electrical Fire Investigations, Hughes Institute.

Executive Development, National Fire Academy.

Fire Investigation and Arson Detection, National Fire Academy.

Hazardous Materials Incident Analysis, National Fire Academy.

Incident Command, National Fire Academy.

Strategic Fire Operations, National Fire Academy.

Basic Police Academy, Missouri State Highway Patrol Academy.

Supervision of Police Personnel, Missouri Highway Patrol Academy.

Police Photography, Missouri State Highway Patrol Academy.

Bomb Technician and Investigation School, U.S. Army and Department of Justice at Redstone Arsenal, Hunstville, Alabama.

Strategic Analysis of Fire Department Leadership, National Fire Academy.

Integrated Emergency Management System, National Emergency Management Institute.

Hazardous Materials for the First Responder, Environmental Protection Agency.

Hazardous Materials Analysis, Environmental Protection Agency.

Fire Protection Institute, National Fire Protection Association.

Vehicle Fire Investigation, Lee Cole and Associates, September, 2000, Lake Tahoe, California.

Professional Fire and Fraud Investigators Association Conference, September 2000, St. Louis County, Missouri.

Missouri Division of Fire Investigation Recertification Course, March, 2001.

Safety and Survival on the Fireground, Heart of America Fire Chiefs Council, March 2001.

Metro Kansas City Arson Task Force Investigation Seminar, 2002, 2003, 2004, 2005, 2006, 2007, and 2008.

Incident Command for Highrise Operations, National Fire Academy, April, 2003.

Ignitable Liquids Firefighting: Ethanol Blended Fuels Operations, University of Missouri, September 16, 2009.

Numerous courses and seminars in the field of fire suppression, prevention, administration, and fire investigation conducted by the University of Missouri, the University of Kansas, the Missouri Chapter of the International Association of Arson Investigators and the Professional Fire and Fraud Investigators Association. Have received substantial training in hazardous materials.

**PROFESSIONAL ORGANIZATIONAL PARTICIPATION:**

- Member of National Fire Protection Association Technical Committee, Guideline for Fire and Explosions Investigations, NFPA 921.
- Past President, International Association of Fire Chiefs.
- Member of National Medal of Honor Board, appointed by the United States Congress.
- Former Member, Executive Committee, International Association of Fire Chiefs.
- Former Member, Board of Directors, International Association of Fire Chiefs.
- Professional Fire and Fraud Investigators Association.
- International Association of Arson Investigators.
- Society of Executive Fire Officers.

- Missouri Valley Division of the International Association of Fire Chiefs.
- National Fire Protection Association.
- Missouri Association of Fire Chiefs.
- Heart of America Fire Chiefs Council.
- Western Missouri Fire Chiefs Association.
- International Association of Fire Chiefs.
- Metropolitan Association of Fire Chiefs.
- Former Chair, Mid America Regional Council Local Emergency Planning Committee for Hazardous Materials.
- Member of Mid America Regional Council Homeland Security Coordinating Committee and Chair of the Policy Sub-Committee.
- Blue Ribbon Panel Member for review of the United States Fire Administration for the Federal Emergency Management Agency.
- Served as a facilitator for three America Fire Service Summits.
- Former member, Arson Committee of the International Association of Fire Chiefs.
- Former member, Technical Committee of the International Association of Arson Investigators.
- Former member, Arson Committee of the Missouri Association of Fire Chiefs.

**TEACHING EXPERIENCE:**

While a full time faculty member of University of Central Missouri (Central Missouri State University), instructed students in fire scene and explosion investigation. Have served as an adjunct instructor in fire, rescue and hazardous materials matters for several institutions including the University of Kansas, the St. Louis Police Academy, the Kansas City Police Academy, the Missouri State Highway Patrol Academy, the Missouri and Kansas Chapters of the International Association of Arson Investigators, the Professional Fire and Fraud Investigators Association, the National Fire Academy, the International Association of Fire Chiefs. Currently serve as an adjunct instructor for the Fire and Rescue Training Institute of the University of Missouri.

**AWARDS AND HONORS:**

- Harry Hanson Award for 1986 Outstanding Fire Investigator, presented by the Professional Fire and Fraud Investigators Association.
- 1995 Mid America Regional Council's Award for Administrator of the Year.
- 2000 David Garcia Award for Outstanding Emergency Medical Service Administrator, presented by the Mid America Regional Council for Emergency Rescue.
- Career Fire Chief of the Year, presented by Fire Chief magazine at the 2005 International Association of Fire Chiefs Conference.

*Updated 02/01/2010*

**RICHARD A. DYER**

To the best of my recollection, I have testified as an expert by deposition or at trial within the preceding four (4) years in the following cases:

1. Building Construction Enterprises, Inc., v. Board of County Commissioners of the County of Johnson, et al.

   District Court of Johnson County, Kansas
   No. 06CV03708

   Testified by deposition on April 6, 2009.

2. Ines Adolfo Castillo, Individually, As Representative of the Estate of Maria Teresa Ponce, Deceased, As Representative of the Estate of Ruben Castillo Ponce, Deceased, Julieta Ponce; Julieta Ponce Ley and As Representative of the Estate of Gilberto Ponce, Deceased; and Patricia Villalobos, Individually, As Representative of the Estate of Jennifer Ponce, Deceased, As Representative of the Estate of Valeria Ponce, Deceased, As Representative of the Estate of Kevin Ponce, Deceased, and Hector Hernandez v. ONEOK, Inc., d/b/a Texas Gas Service Company and Braxton Merritt

   County Court of Law Number Three
   El Paso County, Texas
   Case No. 2005-088

   Testified by deposition on November 15, 2006.

3. Miguel and Norma Cisneros, Individually and as Personal Representatives of the Estate of Joyce Cisneros, Deceased, and Norma Cisneros, Individually and as Personal Representative of the Estate of Priscilla Soledad, Deceased, and Jay Goodman, as Guardian ad Litem on Behalf of and for Jennifer Romero and Angelica Romero, Minors; and Santa Fe Trust, Inc., as Personal Representative of the Estates of Rey Romero, Suzanna Romero, and Myra Veronica Romero, Deceased, v. Jahaziel Romero and General Motors Corporation

   First Judicial District Court
   County of Santa Fe
   State of New Mexico

   Testified by deposition on May 30, 2007.

4. Roxie Clevenger, wife of Billy Ray Clevenger, deceased, v. General Motors Corporation and Westfall O'Dell Motors, Inc.

   Circuit Court of Clay County, Missouri, at Liberty
   No. CV104010886CC

Testified by deposition on March 13, 2009, and testified by trial on May 12, 2010.

5. Arvin E. Curlis, as Personal Representative of the Estate of Geraldine Curlis, deceased, v. R-Vision, Inc., a Foreign Corporation, and Dusty's Camper World, LLC, a Foreign Limited Liability Corporation, f/k/a Dusty's Camper World of Bartow, Inc.

   Circuit Court of the Tenth Judicial Circuit of Florida, in and for Polk County
   No. 2006-CA-004930-0000-00

   Testified by deposition on April 7, 2008.

6. Brian Daniels, By and Through His Next Friend, Lucille Daniels v. Springridge Properties, II, L.P. and Action Management and Consulting Services, L.L.C.

   Circuit Court of Johnson County, Missouri
   No. 05J0-CV00425

   Testified by deposition on June 16, 2007.

7. Wanda Fields v. Rheem Manufacturing Company and Honeywell International, Inc.

   415 Judicial District
   Parker County, Texas
   CV07-2722

   Testified by deposition on February 1, 2010.

8. John and Georgiana Grant, Mike & Dana Claxton, Lon & Debra Goff, Richard & Linda Robinson and Dennis Brooks v. Brink's Incorporate, and Chuck Parker and Jane Parker, d/b/a Classic Storage, Griffin, Inc. and International Truck and Engine Corporation.

   Circuit Court of Greene County, Missouri
   Case No. 198CC0749

   Testified by deposition on March 8, 2010.

9. Kathleen Kline v. City of Kansas City, Missouri

   Circuit Court of Jackson County at Kansas City
   No. 0716-CV12639

   Testified by deposition on September 9, 2008, and at trial on December 21, 2009.

10. Lisa Kline, Individually and as Natural Mother of Alexandria D. Kline, v. General Motors Corporation, James E. Haas, and Dominique W. Harris

Circuit Court of the City of St. Louis
State of Missouri
Case No. 042-09579

Testified by deposition on November 4, 2006, and at trial on December 22, 2007.

11. Francis Kojeski v. National Foundation for Housing, Inc., a Virginia Corporation and Advanta Real Estate Services, Inc., a Missouri Corporation

Circuit Court of Jackson County, Missouri at Kansas City
No. 03CV232902

Testified by deposition on May 7, 2009.

12. Catrina Lorenti v. Adrian Sepulveda, II, a Florida resident; The Estate of Adrian Sepulveda, III; Luxury Imports of Palm Beach Inc., d/b/a Lexus of Palm Beach, a Florida corporation, Southeast Toyota Distributors, LLC., a foreign corporation; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Credit Corporation, a foreign corporation; and Toyota Motor Corporation, a foreign corporation.

Testified by deposition on March 30, 2009.

13. Raymond Misner and Melissa Robinette as next friends of Justin Misner v. Midwest Can Company, an Illinois corporation, et al.

Circuit Court of Cook County, Illinois
03 L 004190

Testified by deposition on September 26, 2006.

14. Honce Molthan and Tracey Molthan as the Biological Parents and Next Friend of the Minor, Spencer Molthan v. Rubbermaid Specialty Products, Inc.; Rubbermaid, Inc.; Rubbermaid International Sales Corp.; Newell Rubbermaid, Inc.; Rheem Manufacturing Company, Inc.; Sutherland Lumber Company of Kansas City, LLC; The Inspection Company, LLC; Robert W. Taylor; and Wilma J. Taylor

Circuit Court of Jackson County, Missouri, at Kansas City, Division 12
No. 04-CV-219552

Testified by deposition on September 26, 2006.

15. Newell Rubbermaid, Inc., et al v. Efficient Solutions, Inc., et al.

Circuit Court of St. Francois County
State of Missouri
No. 01CV612725

Testified by deposition on November 17, 2004, and at trial on August 3, 2006.

16. Kenneth Oglesby and Pat Oglesby v. Guidry Electric, Inc., Eaton Corporation, and Gary Hefner

District Court of Osage County
State of Oklahoma
No. CJ-2006-507

Testified by deposition on April 5, 2009.

17. Patricia Sapp, Surviving Spouse of Arcie Sapp, Sheila Bennett, Christine Rene Phillips, and Arcie Sapp, Jr., Surviving Natural Children of Decedent, Arcie Sapp v. Morrison Brothers Company, Double Check Company, Inc., Mid-State Petroleum Equipment, Inc., Certified Repair Service, J.L. Eckelberry d/b/a/ Eckelberry Service Co. and Shirley Environmental Testing, L.L.C.

Circuit Court of Jackson County, Missouri, at Independence, Division 2.
No. 0516-CV22177

Testified by deposition on April 28, 2007, and at trial on May 17, 2007.

18. Kashmir K. Singh, et al., v. Toyota Motor Corporation, et al.

Superior Court of the State of California for the County of San Joaquin
No. CV023159

Testified by deposition on January 5, 2007, and at trial on December 19, 2007, and January 3, 2008.

19. Arlene Thurston v. City of Kansas City

Circuit Court of Jackson County, Missouri

Testified by deposition on October 17, 2007.

20. Donald L. Townsend, III v. General Motors Corporation; Koon's Pontiac – GMC Truck; and G&P Automotive Group, Inc.

Circuit Court of the Third Judicial Circuit in and for Suwanee County, Florida
No. 6120D5CA000690001XX

Testified by deposition on July 27, 2007.

21. Tina Marie Tyler and Derrick T. Tyler as Co-Personal Representative of the Estate of Sade Tyler v. Honeywell International, Inc. and KAZ, Inc.

United States District Court for the District of South Carolina – Charleston Division
No. 2:05-0675-PMD

Testified by deposition on April 20, 2006.

22. Chad Vest, Individually and as Special Administrator of the Estate of Allen J. Vest v. Freightliner, LLC, Quick Start Products & Solutions, and Daimler AG

United States District Court for the Western District of Tennessee, Western Division at Memphis
No. CV-02517

Testified by deposition on December 23, 2008, and at trial on April 20, 2009.

23. Villa Verde Residential Association v. SimplexGrinnell Corporation.

Circuit Court of Cook County, Illinois
No. 2005 L 009564

Testified by deposition on October 1 and 7, 2008.

May 14, 2010
DATE

Richard A. Dyer
RICHARD A. DYER

**RICHARD A. DYER**
FIRE CONSULTANT

P.O. BOX 28157
KANSAS CITY, MO 64188-0157
PHONE .816.223.0888 FAX .816. 415.4494
smokeydyer@kc.rr.com

# FEE SCHEDULE

Professional Services- $250.00 per hour
Inspections, document review, preparation, travel and etc.

Deposition, arbitration, mediation and trial testimony- $300.00 per hour
Includes testimony and standby time

Expenses
Coach airfare-Actual costs incurred
Car rental, taxi fare, lodging, meals, etc.- Actual costs incurred
Mileage- $.70 per mile

Effective - January 1, 2008