IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

K.R. SMITH TRUCKING, LLC,,       )
                                 )
            Plaintiff,           )
                                 )
    v.                           )   Case No. 08-1351-WEB
                                 )
PACCAR, INC. and PETERBILT       )
MOTORS COMPANY, a division of    )
PACCAR, INC., and WESTERN        )
PETERBILT, INC.,                 )
                                 )
            Defendant.           )

MEMORANDUM AND ORDER

Defendant PACCAR, Inc. and Peterbilt Motors Company (Peterbilt) filed a Motion for Summary Judgment. (Doc. 84). Plaintiff Smith filed a Motion for Leave to Amend Complaint and for Reconsideration. (Doc. 88). Western Peterbilt, Inc. (Western) has also filed a Motion for Summary Judgment. (Doc. 98).

I. Facts

1. The truck at issue is a 2006 Peterbilt Model 379, Serial Number 1XP5DB9X05D841477. (Pretrial Order, Stipulations, p. 2).

2. Peterbilt Motors Company designed and manufactured the truck. (Pretrial Order, Stipulations, p. 2).

3. Smith was told that prior to his purchase, the truck was leased and operated by Boeing. (Pl. Exh. D, Depo. Smith, p. 19).

4. The truck had approximately 42,000 miles on it. (Amended Complaint, Doc. 10).

5. Smith purchased the truck as a used truck. (Pretrial Order, Stipulations, p. 2).

6. Smith negotiated the sale of the truck with Ron Christenson, a salesman. Ron and his manager established the amount Western Peterbilt would pay Smith for his trade-in. (Pl. Exh. D, Depo. Smith, p. 21-23).

7. Smith agreed to purchase the truck on March 14, 2005. (Pl. Exh. A, Customer Purchase Order).

8. Smith did not sign the Customer Purchase Order until March 21, 2005. (Pl. Exh. A, Customer Purchase Order).

9. Smith completed the purchase of the truck on March 28, 2005, from Western Peterbilt, Inc., in Spokane, Washington. (Pretrial Order, Stipulations, p. 2).

10. On March 28, 2005, the Long Term Lease Agreement and Sales Invoice was prepared and signed by the parties. (Pl. Exh. B, Long Term Lease Agreement; Pl. Exh. C, Sales Invoice).

11. Smith signed the documents, but did not read them. (Pl. Exh. D, Smith Depo., p. 33).

12. Smith later had some mechanical problems with the truck. He learned that there were no warranties on the truck. (Pl. Exh. D, Smith Depo., p. 28).

13. Smith saw Peterbilt / PACCAR generic advertisements in The Official Publication of the Owner-Operator Independent Drivers Association ("OOIDA"). (Pl. Exh. D, Smith Depo., p. 35-39).

14. The specific advertising on this truck did not induce Smith to buy the truck. (Pl. Exh. D, Smith Depo., p. 37).

15. On September 28, 2007, Smith was operating the truck near Lebo, Kansas, when the truck caught fire. (Pretrial Order, Stipulations, p. 2).

16. The truck was a total loss. (Amended Complaint, Doc. 10).

17. The truck had at least 325, 900 miles on it at the time of the fire. (Western Exh. M, Report of Ron Curbo).

18. Smith had added thousands of dollars in aftermarket parts to the truck. (Pl. Exh. D, Smith Depo., p. 57-63).

19. Maintenance had been performed by a number of mechanics at various business. (Pl. Exh. D, Smith Depo., p. 75-84).

II. Jurisdiction

Jurisdiction is not disputed. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

III. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Thomas v. Metropolitan Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-1232 (10th Cir. 2001), quoting Adler v. Wal-Mart Stores, 144 F.3d 664, 670 (10th Cir. 1998). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670. The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgement. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000). The burden of showing that no genuine issue of material fact exists is borne by

the moving party.  E.E.O.C. v. Horizon / MS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000).  Once the moving party meets the burden, the nonmoving party must demonstrate a genuine issue for trial on a material matter.  Concrete Works, Inc. v. City & County of Denver, 36 F.3d 1513, 1517 (10th Cir. 1994).

IV.  Summary of the Case and Motions

Smith filed the present suit against Peterbilt, which included PACCAR, Peterbilt Motors Company as a division of Paccar, and Western Peterbilt.  Smith alleges violations of the Washington Consumer Protection Act; Breach of Implied Warranties of Merchantability and of Fitness for a Particular Purpose; Breach of Express Warranties by Affirmation, Promise, Description or Sample; and Strict Liability.  In the Memorandum and Order (Doc. 21) filed in response to plaintiffs' motion to dismiss, the court ruled that Washington law applied to contract claims, and Kansas law applied to tort claims.  The court dismissed Smith's claim of breach of implied warranties of merchantability and of fitness for a particular purpose and also dismissed Smith's strict liability claim.

a.  Motion to Amend / Motion for Reconsideration

Smith has filed a motion to amend the complaint, and a motion for reconsideration of the court's order on the motion to dismiss.  Smith argues that during discovery, documents became available which show there was privity of contract, and therefore the claims for implied warranties of fitness and merchantability are applicable to this case and should be reinstated. Smith also argues that there was not specific negotiation between the parties related to the waiver of the warranties as required by the Washington Consumer Protection Act.

Smith requests that the court allow him to amend the complaint, to include three

additional claims: concealment of a known fire risk by the defendants; negligence for failure to inspect, inform, recall or replace fuel lines; and a claim that the defendants ignored known information that the material used in their fuel lines were at risk for fire.  Defendants object to an amendment of the complaint at this late stage of the case.

Western argues Smith's motion for reconsideration should be denied as it procedurally and substantively defective under Rule 59(e) and Rule 60.  Western argues the motion to amend should be denied, as Smith was not a third party beneficiary of any contract, and Smith was not in privity with defendants.

b.  Motion for Summary Judgment

Paccar and Peterbilt Motors Company request summary judgment on the two remaining claims.  Peterbilt argues that Smith's Washington Consumer Protection Act claim should fail as there is insufficient evidence to prove the claim.  Peterbilt argues that there is insufficient evidence to establish that Peterbilt engaged in unfair or deceptive acts or practices, or that the actions affected the public interest.  Peterbilt further argues that advertisements did not occur in Peterbilt's trade or commerce.  Finally, Peterbilt argues that Smith's express warranty claim is not supported by material evidence as Smith did not rely on Peterbilt's advertising.

Western also requests summary judgment on the WCPA claim, arguing that Smith has not established the necessary facts for the court to find that the elements of the Act have been met. Western argues that Smith cannot demonstrate an unfair or deceptive practice; cannot establish a defect existed at the time of the sale, or that Western knew about a defect; and cannot demonstrate any misrepresentation.  Western also argues that Smith cannot show a deceptive practice that affects the public interest, or a causal link between the alleged deceptive act and the

injury.

Smith argues that the WCPA applies, and defendants failed to disclose a material fact, which qualifies as a deceptive act under the CPA. Specifically, Smith argues that defendants had an obligation to disclose the lack of warranty on the vehicle, and the known defects. Smith concedes that there is not a valid express warranty claim, and agrees the express warranty claim should be dismissed.

V. <u>Discussion</u>

a. <u>Motion for Reconsideration</u>

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration. <u>Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.</u>, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). The District of Kansas Rules contain a provision entitled "Motion to Reconsider," which provides:

> A party may file a motion asking a judge or magistrate judge to reconsider an order or decision made by that judge or magistrate judge.
> (a) Dispositive Orders and Judgments. Motions seeking reconsideration of dispositive orders or judgments must be filed pursuant to Federal. R. Civ. P. 59(e) or 60. Reconsideration of such an order of judgment will not be granted under this rule.
> (b) Non-dispositive Orders. Motions seeking reconsideration of non-dispositive orders shall be filed within ten days after the filing of the order unless the time is extended by the court. A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. D. Kan. R. 7.3.

This court has previously held that an order that does not dispose of all the claims in the case is considered non-dispositive. <u>Fusco v. Insurance Planning Center</u>, No. 05-1245 (D.Kan.) (Doc. 140) ("dispositive order" in Rule 7.3 means a final judgment or order that disposes of all remaining claims in the case). *Cf.* Fed.R.Civ.P. 54(b) (any order that adjudicates fewer than all

the claims or rights of all the parties may be revised at any time before the entry of a final judgment). Since the court's order of October 23, 2009 did not dispose of all the claims, the order is considered non-dispositive, and the motion to reconsider is reviewed under D.Kan.R. 7.3(b).

A motion to reconsider is not appropriate to revisit issues already addressed or to advance arguments that could have been raised in prior briefing. See e.g., Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (addressing motion for reconsideration under Rule 59(b)). The decision whether to grant a motion to reconsider is committed to the district court's discretion. In re Motor Fuel Temp. Sales Practices Litigation, 707 F.Supp.2d 1145, 1166 (D.Kan. 2010).

The language of Rule 7.3 requires that a motion to reconsider "shall be filed within ten days after the filing of the order." D.Kan.R. 7.3(b). The Memorandum and Order was filed on October 23, 2009, and the Motion for Reconsideration was not filed until November 15, 2010. The only exception is if additional time is given by the court. Smith did not file a motion requesting additional time to file a Motion for Reconsideration. The motion was not filed within the 10 day period and relief is not available to Smith.

The court notes that Smith's motion to reconsider the court's dismissal of the implied warranty claim is immaterial, as the parties disclaimed all warranties in the sales agreement. Warranty disclaimers are ineffectual unless the parties explicitly negotiate them. Berg v. Stromme, 79 Wash.2d 184, 196, 484 P.2d 380 (1971). The seller's disclaimer "must be (1) conspicuous, (2) known to the buyer, and (3) specifically bargained for." Burbo v. Harley C. Douglass, Inc., 125 Wash.App. 684, 693, 106 P.3d 258 (2005). The third requirement prevents

7

sellers from hiding disclaimers in the fine print or boiler plate language of a contract. Olmstead

v. Mulder, 72 Wash.App. 169, 176-78, 863 P.2d 1355 (1993). Implied warranties can be

disclaimed by expressions like "as is." See RCWA 62A.2-316(3)(a).

On March 21, 2005, Smith signed the Customer Purchase Order. The order contained the

following language: **"NOTE: USED VEHICLES ARE SOLD 'AS IS' WITH NO**

**WARRANTY, unless otherwise certified by Seller in Writing."** (Pl. Exh. A). The court in

Warner v. Design & Build Homes, Inc., 128 Wash.App. 34, 114 P.3d 664 (2005) stated that a

reasonable person will understand an "as is" clause to "waive all implied warranties." Id. at 40-

41. In the case at hand, the equipment lease agreement contained the following language:

> 4) WARRANTY
> LESSOR LEASES THE EQUIPMENT TO LESSEE "AS IS" AND MAKES NO
> WARRANTIES REGARDING THE EQUIPMENT, INCLUDING, BUT NOT
> LIMITED TO, THE BODY, ENGINE, TRANSMISSION, DRIVETRAIN, ANY
> OTHER MECHANICAL PARTS, THE ELECTRICAL SYSTEM, ANY
> ACCESSORIES AND ALL OPTIONS ON THE EQUIPMENT WHETHER
> EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO
> PERFORMANCE GUARANTIES AND IMPLIED WARRANTIES OF
> MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ALL
> OF WHICH ARE EXPRESSLY EXCLUDED. Lessor shall not be liable for any
> direct, indirect, incidental or consequential damage or losses resulting from the
> operation or use of the Equipment. In addition, the Lessor shall not be
> responsible for any loss, damage or claim caused by or attributable to any defect
> or deficiency in any Equipment whether raising out of the Equipment's
> manufacture, design or otherwise.
>                  (Lessee's initials)_____

The Equipment lease agreement was attached to the Long Term Lease Purchase Option

Agreement, which was signed by the parties on March 28, 2005. The warranty disclaimer was

made known to Smith prior to the sale of the truck. The warranty disclaimer was in bold, capital

letters, and Smith had to initial under the warranty disclaimer, acknowledging that he negotiated

and agreed to the disclaimer. In Olmstead, the court ruled that discussing the provision was

sufficient to show that the parties "bargained for" the disclaimer.  72 Wash.App. At 176-77.  The disclaimer of the implied warranties is effectual.

Smith argues that under Washington law, "a buyer does not waive any implied warranties that normally attach to goods unless he has had an opportunity to thoroughly inspect the good and the inspection would have revealed defects which might affect the implied warranties." Doc. 105, p. 27), citing to RCW 62A 2-316(3)(b); and <u>Testo v. Russ Dunmire Oldsmobile, Inc.</u>, 16 Wash.App. 39, 44-45, 554 P.2d 349.  However, this was not the issue before the court at the motion to dismiss.  In their motions to dismiss, the defendants argued that there was no privity of contract and the implied warranty claim therefore failed.  Smith responded that there was privity of contract.  To the extent that Smith advances a new argument in his motion to reconsider, the court will not allow him to litigate the new argument, as that is not the purpose of a motion to reconsider.  As discussed in further detail below, Smith has not shown the vehicle contained a defect, therefore this argument fails.  Smith's motion to reconsider the implied warranty claim is denied.

b. <u>Motion to Amend</u>

"A party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed.R.Civ.P. 15(a)(2). Smith attempted to include three new claims in the pretrial order, which should be evaluated by the court under the standards set forth in Rule 15(a).  <u>Wilson v. Muckala</u>, 303 F.3d 1207, 1215 (10th Cir. 2002).  The court has discretion whether to allow amendment of the pleadings.  <u>Zenith Radio Corp. V. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).  The purpose of Rule 15 is to provide litigants "the maximum opportunity for

each claim to be decided on its merits rather than on procedural niceties." Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982).  The Supreme Court held that amendment of the pleadings should be allowed in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment..." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  The defendant experiences undue prejudice when the amendment unfairly affects the defendant's ability to prepare its defense.  Minter v. Prime Equipment Co., 451 F.3d 1196, 1208 (10th Cir. 2006).  "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  Id.

Denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay."  Frank v. U.S. West, 3 F.3d 1357, 1365-66 (10th Cir. 1993).  In the pretrial order, Smith attempted to amend the pleadings to include a claim for concealment of known fire risk; negligence for failure to inspect, inform, recall, or replace fuel lines; and a claim that defendants ignored reports that the material used in the fuel lines were at risk for fire and defendants did not modify the fuel lines.  The court denied Smith's motion to amend without prejudice, and directed Smith file a formal motion on or before November 24, 2010.

Smith's motion was not timely.  The first request to amend the complaint was at the pretrial conference, after the completion of discovery.  Smith attempts to argue that the facts that form the basis for the proposed amendments were not known until the close of discovery.  However, a review of Smith's response to the motion to dismiss (Doc. 16), filed January 9, 2009, shows that Smith made the following argument:

> "there is a known history of similar events to the fire that consumed the tractor in question. It is known that this event is not the first such event to have occurred to a Peterbilt tractor under the same or similar circumstances, and it is known to have occurred several times. Certainly, no efforts are known to this plaintiff that defendants ever attempted to warn or advise the public, or this plaintiff of the defective condition of the subject tractor, nor the defective condition of any similar or same model tractors that have suffered the same or similar damage."
> (Doc. 16, p. 3).

Smith's proposed amendments are centered around the fire, whether the defendants knew about the risk of fire, and whether or not defendants ignored information regarding fires in Peterbilt trucks. The proposed claims are based on the same arguments and facts known to Smith at the motion to dismiss stage. The complaint could have been amended sometime in 2009 to add the additional claims. Smith has not set forth a reasonable explanation for the delay in requesting a modification of the complaint.

If the court were to allow Smith to amend his complaint at this time, it is very possible a new round of discovery and the refiling of dispositive motions would be required. Obviously, this would result in undue prejudice to the defendants. Smith's motion to amend will be denied.

c. <u>Summary Judgment</u>

A violation of the Washington Consumer Protection Act has five elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wash.2d 778, 785-793, 719 P.2d 531 (Wash. 1986). All five elements must be alleged to support a WCPA claim. <u>Id.</u> at 784. The parties do not dispute that the Peterbilt tractor was sold in trade or commerce, nor do the parties dispute that there was injury to the plaintiff.

To establish the first element, the plaintiff must demonstrate "either (1) the act had the

capacity to deceive a substantial portion of the public or (2) that the practice constitutes a per se unfair trade practice." Minnick v. Clearwire US, LLC, 683 F.Supp.2d 1179, 1186 (W.D.Wash. 2010). The Washington Court has defined "deceptive" as a practice that "misleads or misrepresents something of material importance." Nhuyen v. Doak Homes, Inc., 140 Wash.App. 726, 734 (2007). Whether particular actions are deceptive are a question of law. Dombrosky v. Farmers Ins. Co. Of Washington, 84 Wash.App. 245, 260, 928 P.2d 1127 (1996). In Potter v. Wilbur-Ellis Co., 62 Wash.App. 318, 814 P.2d 670 (1991), the court ruled that a material fact known by the seller and not communicated to the buyer may be classified as an unfair or deceptive act due to its inherent capacity to deceive. Id. at 327-28.

An unfair or deceptive act or practice regarding the sale of motor vehicles may occur in connection with advertisements for the vehicle or representations made by the defendant regarding the vehicle, in connection with the sales transaction, or following delivery of the vehicle. Dempsey v. Joe Pignataro Chevrolet Inc., 22 Wash.App. 384, 391, 589 P.2d 1265 (1979).

Smith argues that defendants were deceptive in failing to disclose a known defect in a product, and were deceptive in using boilerplate language to disclaim warranties. Smith alleges the known defect was the design of the wires, use of cheap material, and the risk of fire. Defendants argue there is insufficient evidence to establish that any defendant committed a deceptive act or practice.

The court notes that Smith refers to a "known defect" throughout his briefings. When a defect is known, the seller has a general duty to disclose the facts to the buyer. See Griffith v. Centex Real Estate Corp., 93 Wash.App. 202, 214, 969 P.2d 486 (1998), citing Testo v. Russ

Dunmire Oldsmobilt, Inc., 16 Wash.App. 39, 51, 554 P.2d 349 (1976).  The duty to disclose extends to material facts adversely affecting the property, not just concealed defects.  Griffith, 93 Wash.App. at 216-217.   However, Smith has not specifically identified the defect.  A review of the expert opinions submitted in the case at hand show that the experts do not conclude that there was a defect in the trailer.  Rodney Curbo, the Product Safety and Compliance Manager at Peterbilt, opined that the engine harness at the time of the fire had been altered from the way it was manufactured.  (Def. Western Exh. M, Curbo Report).  Charles Jacobs, a certified fire investigator, opined that the fire occurred as a result of chafing of a fuel line and an active electrical conductor.  (Def. Western Exh. I, Jacobs Report).  Jason Wollum opined that the fire was accidental in nature.  (Def. Western Exh. J, Wollum Report).  Lawrence Berg, a certified fire investigator, opined that the fire was accidental in nature.  (Def. Western Exh. K, Berg Report). Richard Dyer, a certified fire investigator, opined that the cause of the fire was undetermined. (Western Exh. L, Dyer Report).  All the experts agree that chafing of electrical wires, electrical arcing, and the vapors of the diesel fuel contributed to the cause of the fire.  None of the experts testified that Peterbilt trucks or Caterpillar motors had a defect, known or otherwise, with the wires.

  Smith also submitted testimony of the tow truck driver, Robert Harsch.  Harsch stated he was a mechanic and an owner of a tow truck business. The tow truck driver is not a fire and origin expert, and is not trained in fire and origin investigation.  Smith admitted that Harsch's testimony was submitted as a fact witness, not as an expert.  (Smith's Statement of Facts 37, Doc. 105).  Smith attempts to admit as evidence the opinion of the he tow truck driver that the fuel line rubs against a bracket, which causes a hole and allows fuel to leak.

Lay opinion testimony is limited to "opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed.R.Evid. 701. Harsch's explanation of the fuel line rubbing against a bracket is not helpful in understanding the cause of the fire, as Harsch only states that the rubbing creates a hole in the fuel line, but does not provide an opinion on how the fuel starts on fire. Harsch also stated that fuel leaks are common with this type of fuel line material. However, Harsch does not provide any documentation to support this conclusion. Harsch's statement that fuel was leaking from the truck when he arrived on scene to tow the truck is properly admissible. However, Harsch's opinion of the cause of the fire is not admissible as it is not based on scientific or technical knowledge. Harsch's opinion that the fuel line is made of a poor material does not lend any support to Smith's allegation that there is a design defect, and is only Harsch's opinion, not supported by any other facts in the record. Opinions of the tow truck driver based on his perception or his observations are admissible, as are Harsch's opinions related to the mechanics of the engine in the truck. At the summary judgment stage, the court may consider only admissible evidence, therefore Harsch's opinion on how the fire started is not relevant to the court's analysis. See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

A review of cases applying the Washington Consumer Protection Act shows that the party claiming a defect typically identifies the specific defect as well as the party responsible for the defect. See Townsend v. Quadrant Corp., 153 Wash.App. 870, 224 P.3d 818 (2009); Carlile v. Harbour Homes, Inc., 147 Wash.App. 193, 194 P.3d 280 (2008) (claims of unfair and

deceptive practices against the builder of houses where builder made affirmative representations as to the quality of the home); Svendsen v. Stock, 143 Wash.2d 546, 23 P.3d 455 (2001) (CPA violation when seller fraudulently conceals material fact, independent of the seller disclosure statement).

In the case at hand, Smith has not presented cases, vehicle reports, accident reports, national safety reports, service bulletins, manual revisions, website information, inter-company memorandums, or any other documents to show that Paccar, Peterbilt or Western were aware of a defect.  In Griffith, the court ruled that a seller must disclose material facts to the purchaser when they are known to the seller.  Griffith v. Centex Real Estate Corp., 93 Wash.App. at 214.  Unlike the Griffith case, there is no evidence before the court that Peterbilt, Western, or Paccar knew about an alleged problem with the fuel line.   Smith has not set forth evidence upon which a trier of fact could find that there was a known defect.  Therefore, Smith cannot show defendants were deceptive in failing to disclose a defect.

Smith also argues that the defendants were deceptive in using boilerplate language to disclaim warranties.  Smith does not provide any case law to support the legal conclusion that the use of "boilerplate" language qualifies as a deceptive act under the CPA.  A review of Washington law shows that warranty disclaimers are reviewed under warranty claims and the Uniform Commercial Code, not under the WCPA.  The parties agreed that the express warranty claim should be dismissed, and the court has ruled that Smith's implied warranty claim was correctly dismissed.  Smith is attempting to argue a warranty claim although there are no warranty claims pending before the court.

Even if Smith could show there was a known defect or that the defendants were deceptive

15

in using boilerplate language to disclaim the warranties, Smith must prove that the act had the capacity to deceive a substantial portion of the public. See Hangman Ridge, 105 Wash.2d at 785. Defendants argue that there is no evidence that a substantial portion of the public was deceived.

The Washington Courts have reviewed a number of cases addressing whether a substantial portion of the public was deceived. In Travis v. Wash. Horse Breeders Ass'n, 111 Wash.2d 396, 759 P.2d 418 (1988), the court found that misrepresentations in seller's advertisements have the capacity to deceive a substantial portion of the public when the seller uses the media to make misrepresentations known to be inaccurate. Id. at 406. In Micro Enhance v. Coopers & Lybrand, 110 Wash.App. 412, 40 P.3d 1206 (2002), the Court found standard form language that is used to "sell" a company's services or their image does not have the capacity to deceive a substantial portion of the public. Id. at 438. In Segal Co. v. Amazon, 280 F.Supp.2d 1229 (W.D.Wash. 2003), the court found the fact that a defendant engages in additional commercial dealings does not always indicate that it's activities have the potential to deceive a substantial portion of the public. Id. at 1233. In Burns v. McClinton, 135 Wash.App. 285, 143 P.3d 630 (2006), the court considered whether there was a pattern of nondisclosure, finding none, determined a substantial portion of the public was not deceived. Id. at 305-06.

In the case at hand, there was no concealment of any warranty disclaimers. As discussed previously, the Customer Purchase Order and the equipment lease agreement contained language that the vehicle was sold "as is." Smith was required to initial in a space immediately following the warranty disclaimer. The disclaimer of the warranties was disclosed. The seller did not call it something that it was not, and did not hide it. In fact, the language required the buyer to initial

under the disclaimer of warranty, ensuring that the buyer was aware of the provision. Smith cannot show the disclaimer of warranties would deceive a substantial portion of the public when the information was not concealed. Smith also cannot proceed on the theory that the language *could* deceive a substantial portion of the public. In Westview Invs., Ltd. v. U.S. Bank Nat'l Ass'n, 133 Wash.App. 835, 854 n. 27, 138 P.32 638 (2006), the Court found that "mere speculation that an alleged unfair or deceptive act had the capacity to deceive a substantial portion of the public is insufficient to survive summary judgment." Id. at 854 n. 27. The record lacks evidence that any other buyers of a Peterbilt truck were deceived. Smith has not provided sufficient evidence for a jury to find that a substantial portion of the public was deceived.

Smith has not set forth evidence upon which a trier of fact could find any defendant participated in an unfair or deceptive act or practice, the first element of the WCPA. There is not a genuine issue of material fact on the question whether the defendants participated in an unfair or deceptive act, or that the alleged act affects a substantial portion of the public. To set forth a prima facie case under the WCPA, Smith must show all five elements. Smith failed to show the first element, therefore, defendants' motions for summary judgment are granted.

VI. Conclusion

IT IS THEREFORE ORDERED for the reasons set forth above, Smith's Motion for leave to Amend and Motion for Reconsideration (Doc. 88) is denied.

IT IS FURTHER ORDERED Paacar, Inc. and Peterbilt Motors Company's Motion for Summary Judgment (Doc. 84) is granted.

IT IS FURTHER ORDERED Western Peterbilt, Inc. Motion for Summary Judgment (Doc. 98) is granted.

IT IS SO ORDERED this 27th day of July, 2011.

                 s/ Wesley E. Brown
                Wesley E. Brown
                Senior United States District Court Judge